UNITED STATES of America, Plaintiff–Appellee,

v.

Alberto Arturo ORTEGA–MENA, Eulices Rivas–Cordova, Jose Antonio Torres–Tirado and Ecchehomo Velgar–Vivero, Defendants–Appellants.

No. 91–2047.

United States Court of Appeals, Fifth Circuit.

Dec. 10, 1991.

Rehearing Denied Feb. 4, 1992.

Roland E. Dahlin, II, Federal Public Defender, Marjorie A. Meyers, Asst. Federal Public Defender, Houston, Tex., for Ortega–Mena.

Elisa Vasquez, Venso & Vasquez, Galveston, Tex. (Court-appointed), for Rivas–Cordova.

Michael G. Martinez, Houston, Tex. (Court-appointed), for Torres–Tirado.

Ivan R. Lopez DeVictoria, Houston, Tex. (Court-appointed), for Velgar–Vivero.

Jeffery A. Babcock, Paula C. Offenhauser, Asst. U.S. Attys., Ronald G. Woods, U.S. Atty., Houston, Tex., for the U.S.

Before GOLDBERG, SMITH, and DUHÉ, Circuit Judges.

DUHÉ, Circuit Judge:

Appellants, criminal defendants Rivas–Cordova, Velgar–Vivero, and Torres–Tirado, appeal their convictions of conspiracy to import cocaine with intent to distribute. Together they allege that they were tried in violation of the Speedy Trial Act (the Act). In addition, Velgar–Vivero contests the sufficiency of the evidence relating to a firearms count and the admission of post-arrest evidence to show conspiracy. Rivas–Cordova appeals his sentence, challenging the district court's finding that he obstructed justice by destroying evidence. Appellant Ortega–Mena, a co-conspirator who pleaded guilty to the drug-trafficking charges, challenges the upward adjustment of his sentence for possession of a firearm.

For the following reasons, we reverse the convictions of Appellants Rivas–Cordo-

va, Velgar–Vivero, and Torres–Tirado, remand for the dismissal of the indictments against them, and affirm the sentence of Appellant Ortega–Mena.

## I. Facts

Customs Service in Galveston, Texas received a tip that the *Spring Bride,* a ship sailing from Colombia to Galveston, carried a large shipment of cocaine. When the ship entered the Galveston port, Customs Service frogmen approached its rudder hold, an area that could be reached only from the water. The frogmen saw six stowaways, including Appellants, in the hold. When the stowaways left the hold to swim ashore, customs patrol officers immediately apprehended five of them. The sixth man was caught three hours later.

In the rudder hold, an area approximately 6′ × 6′ × 12′, the customs agents found eleven duffel bags filled with cocaine, a burlap sack holding five loaded handguns, and other bags containing food and personal items. On one of the men, Rivas–Cordova, the agents discovered a sock full of bullets.

Appellants were arrested and initially appeared before a federal magistrate on April 25, 1990. They were indicted on May 23 and arraigned on June 12. Appellants' trial originally was set for July 30, but was not held until October 1.

## II. Speedy Trial Act

■ We review the facts supporting a Speedy Trial Act ruling using the clearly erroneous standard, and the legal conclusions, de novo. *United States v. Schuster,* 777 F.2d 264, 267 (5th Cir.), *vacated as moot,* 778 F.2d 1132 (5th Cir.1985). The Speedy Trial Act requires that criminal defendants be tried "within seventy days from the filing date ... of the information or indictment, or from the date the defendant has appeared before a judicial officer ... whichever date last occurs." 18 U.S.C. § 3161(c)(1). To determine whether Appellants' trial occurred within the Act's time limit, we must first decide when the speedy trial clock began to run. The Government asserts that the arraignment date set the

clock ticking. But, like many other circuits, we construe "appearance before a judicial officer" to mean a defendant's initial appearance before a judicial officer. *See United States v. Mentz,* 840 F.2d 315, 325 (6th Cir.1988); *United States v. Owokoniran,* 840 F.2d 373, 374 (7th Cir.1987); *United States v. Yunis,* 723 F.2d 795, 796 (11th Cir.1984); *United States v. Haiges,* 688 F.2d 1273, 1274 (9th Cir.1982); *United States v. Carrasquillo,* 667 F.2d 382, 384 (3d Cir.1981); Committee on the Administration of the Criminal Law of the Judicial Conference of the United States, *Guidelines to the Administration of the Speedy Trial Act of 1974, as Amended,* 106 F.R.D. 271, 276 (1985). Appellants' indictments occurred after their first appearances before a judicial officer. Therefore, the indictment date triggers the speedy trial clock. The first day of the seventy-day period was May 24, the day following Appellants' indictments. In total, 130 days elapsed between the date of the indictments and October 1, the date on which the trial began.

### A. Excludable Delay

■ Next we must determine how many days of the 130 we may exclude from the calculation of the seventy-day limit. The Act excludes "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of hearing on, or other prompt disposition of, such motion." 18 U.S.C. § 3161(h)(1)(F). Delay "resulting from other proceedings concerning the defendant" also serves to toll the speedy trial clock. *Id.* § 3161(h)(1). Appellants were arraigned on June 12. The arraignment date is excludable as a proceeding under § 3161(h)(1). On July 2, Appellants filed three pretrial motions. The parties discussed these motions on July 20 at their pretrial conference, but the court did not dispose of them by order until August 9. The thirty-nine days from July 2 to August 9, during which the court considered these three pretrial motions, are excludable under § 3161(h)(1)(F).

■ The Government notes that Appellant Velgar–Vivero filed a motion "to pro-

duce evidence favorable to the defendant" pursuant to *Brady v. Maryland* [1] on June 14, and urges us to exclude the period from that date through August 9. The record, however, indicates that the *Brady* motion was not pending throughout this period. Indeed, the record is devoid of any evidence that the court considered Velgar–Vivero's motion once the Government responded on June 15 that it had no evidence favorable to the defense. At the pretrial conference pending motions were discussed; the docket sheet and minute entries from this meeting specifically refer to the July 2 motions, but do not mention the *Brady* motion at all. Absent any indication that the court actually took Velgar–Vivero's motion under advisement following the Government's response, we will attribute only two days of delay, June 14 and 15, to its "prompt disposition." The total amount of time excludable for pretrial motions and other proceedings, therefore, is forty-two days. When this amount is taken from the 130–day total, eighty-eight days remain, eighteen days over the seventy-day limit.

### B. *"Ends of Justice" Continuance*

█ Finally, we must consider whether the trial judge granted a continuance sufficient to further toll the speedy trial clock. The Act excludes delay for a continuance whose purpose "outweigh[s] the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(8)(A). In granting such an "ends of justice" continuance, a court must consider at least one of the factors specified by the Act, including whether the case is complex and whether failure to grant the continuance would result in a miscarriage of justice. *Id.* §§ 3161(h)(8)(B)(i) & (ii). Courts may not grant "ends of justice" continuances because their dockets are crowded. *Id.* § 3161(h)(8)(C); *United States v. Went-*

*land,* 582 F.2d 1022, 1024 (5th Cir.1978), *cert. denied,* 439 U.S. 1133, 99 S.Ct. 1056, 59 L.Ed.2d 96 (1979).

In June, the court set Appellants' trial date for July 30. On July 16, the Government filed a notice of trial conflict, indicating that it had two other trials, related to Appellants', scheduled for July 30. The Government stated that it could not try all three cases at once and suggested that this case proceed ahead of the other two. At the pretrial conference the court indicated that it was amenable to this suggestion, and accordingly confirmed July 30 as Appellants' trial date. On July 30, however, the trial did not take place. The record does not reveal how or when the parties were notified that their trial would not begin as scheduled.

On September 26, 1991, the court issued an order formally continuing the July 30 trial and establishing the period from July 30 to the "commencement of trial or disposition of charges" as excludable delay pursuant to § 3161(h)(8)(B).[2] On October 1, when the cases were called for trial, Appellants moved for dismissal on the ground that the Speedy Trial Act had been violated. The court denied this motion, stating that the time between July 30 and October 1 was excludable as delay resulting from an "ends of justice" continuance. At this hearing, the court first enunciated its reasons for continuing the case.

█ The lack of a contemporaneous record of the July 30 postponement as well as the September 26 order troubles us because neither furthers our inquiry into whether the court's ruling rested on the Act's permissible factors. The only information we have in this regard is the judge's comments made in response to Appellants' motion to dismiss, two full months after the continuance was granted.[3] Based

---

1. 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

2. The order consisted of a printed form on which the judge checked off her reason for delaying the trial: "failure to grant continuance would stop further proceedings or result in the miscarriage of justice."

3. We recognize that many circuits have held that a court need not contemporaneously explain its reasons for granting an "ends of justice" continuance; as long as the court considers the proper factors at the time it grants the continuance, the delay is excludable. *See United States v. Vasser,* 916 F.2d 624, 627 (11th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 1688, 114 L.Ed.2d 82 (1991); *United States v.*

on those comments, however, we conclude that on July 30, the court, on its own motion, continued the case because it "was engaged in a trial." The Government then proceeded to prosecute the related cases pending in another court. Appellants' trial, thus, was not postponed because the prosecution was unavailable (in fact, the Government was prepared to try this case before the others), but because the court was tied up with other proceedings. We appreciate the difficulty in beginning a new trial in these circumstances, but it is not a statutorily permissible basis for an "ends of justice" continuance. 18 U.S.C. § 3161(h)(8)(C); *see United States v. Nance,* 666 F.2d 353, 360 (9th Cir.), *cert. denied,* 456 U.S. 918, 102 S.Ct. 1776, 72 L.Ed.2d 179 (1982). The continuance, therefore, cannot serve to toll the speedy trial clock.

Because Appellants Rivas–Cordova, Velgar–Vivero, and Torres–Tirado were tried more than seventy days after their indictments, we REVERSE the ruling of the district court and REMAND the case to the district court to dismiss the indictments according to the mandates of 18 U.S.C. § 3162(a)(2). We express no opinion as to whether the district court should dismiss the indictments with or without prejudice, but we note that an over-burdened judicial system, rather than prosecutorial misconduct, appears to have caused this trial's delay. *See United States v. Castle,* 906 F.2d 134, 138–39 (5th Cir.1990). In light of this disposition, we need not address the other issues raised by Appellants Rivas–Cordova and Velgar–Vivero.[4]

### III. Ortega–Mena's Sentence

■ Ortega–Mena pleaded guilty to four drug trafficking counts in return for the dismissal of one firearms count. Over his objection, the district court enhanced Ortega–Mena's sentence pursuant to U.S.S.G. § 2D1.1(b)(1), which provides for a two-point upward adjustment "if a dangerous weapon (including a firearm) was possessed during the commission of the offense...." Ortega–Mena challenges his sentence, arguing that the Government produced no evidence showing that the presence of firearms was reasonably foreseeable to him.

We review the factual findings that support a sentence using a clearly erroneous standard and giving "due deference to the district court's application of the guidelines to the facts." 18 U.S.C. § 3742(e); *United States v. Parks,* 924 F.2d 68, 71 (5th Cir. 1991). We find ample support in the record for the district court's conclusion that it was reasonably foreseeable to Ortega–Mena that guns "would be—or could be present" in connection with this offense. Ortega–Mena was offered $20,000 in Colombia to escort a "small package" to the United States. He stowed away for five days in cramped quarters with five other men, one of whom was found carrying a sock full of bullets. The men, their clothes, and their food all were in close proximity to the drugs and guns for the duration of the trip. From these facts, the district court could infer that Ortega–Mena should have foreseen the presence of weapons in the rudder hold. *See United States v. Aguilera–Zapata,* 901 F.2d 1209, 1215–

---

*Crane,* 776 F.2d 600, 606 (6th Cir.1985); *United States v. Brooks,* 697 F.2d 517, 522 (3d Cir.1982), *cert. denied,* 460 U.S. 1073, 103 S.Ct. 1531, 75 L.Ed.2d 952 (1983); *United States v. Edwards,* 627 F.2d 460, 461 (D.C.Cir.), *cert. denied,* 449 U.S. 872, 101 S.Ct. 211, 66 L.Ed.2d 92 (1980). Our holding, however, does not turn on the timing of the district court's articulation, but on its content.

**4.** To aid in applying double jeopardy principles, however, we note the following. *See Burks v. United States,* 437 U.S. 1, 18, 98 S.Ct. 2141, 2150, 57 L.Ed.2d 1 (1978); *United States v. Mize,* 820 F.2d 118, 120 (5th Cir.), *cert. denied,* 484 U.S.

943, 108 S.Ct. 328, 98 L.Ed.2d 355 (1987); *United States v. Perez–Reveles,* 715 F.2d 1348, 1353 (9th Cir.1983). Though our holding is based on procedural grounds, we note that the evidence supporting Velgar–Vivero's firearms conviction, when viewed in the light most favorable to the verdict, with all reasonable inferences and credibility choices made in support of it, is such that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Kim,* 884 F.2d 189, 192 (5th Cir.1989).

16 & n. 5 (5th Cir.1990). His sentence, therefore, is AFFIRMED.

The case is REVERSED and REMANDED in part, and AFFIRMED in part.