**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 92-7400


UNITED STATES OF AMERICA,

Plaintiff-Appellee,


VERSUS


ECCEHOMO VELGAR-VIVERO,
JOSE ANTONIO TORRES-TIRADO and
EULICES RIVAS-CORDOVA,

Defendants-Appellants.


Appeals from the United States District Court
For the Southern District of Texas

(November 17, 1993)


Before JOHNSON, WIENER, and DeMOSS, Circuit Judges.

DeMOSS, Circuit Judge:

For the second time, Eccehomo Velgar-Vivero, Jose Antonio Torres-Tirado, and Eulices Rivas-Cordova appeal their convictions of conspiracy to possess with the intent to distribute cocaine,[1] aiding and abetting the importation of cocaine,[2] aiding and abetting the possession of cocaine on a vessel arriving in the

---

[1]    21  U.S.C. §§ 841(a)(1), 841(b)(1)(A), 846, 952, 960(b)(1), and 963.

[2]    21 U.S.C. §§ 952(a), 960(b)(1), and 18 U.S.C. § 2.

United States,[3] aiding and abetting possession with the intent to distribute cocaine,[4] and use of a firearm during a drug-trafficking crime.[5]  In the first appeal, we reversed their convictions because of noncompliance with the Speedy Trial Act.  United States v. Ortega-Mena, 949 F.2d 156 (5th Cir. 1991).  We now affirm the convictions of Torres-Tirado, affirm the convictions and sentence of Rivas-Cordova, but reverse the convictions of Velgar-Vivero because of insufficient evidence.

## I. Facts and Procedural History

Customs officials received information that THE SPRING BRIDE, a cargo ship traveling from the Republic of Colombia to Galveston, Texas, was being used to transport cocaine into the United States. As the vessel entered the Port of Galveston, U.S. Customs frogmen entered the water and approached the rudder hold of the vessel.  As they neared, six men[6] bailed out of the hold and attempted to flee. Five were apprehended immediately, and the sixth, Velgar-Vivero, hid under the dock and was caught three hours later.

---

[3]     21 U.S.C. §§ 955, 960(b)(1), and 18 U.S.C. § 2.

[4]     21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 18 U.S.C. § 2.

[5]     18 U.S.C. § 924(c)(1).

[6]     The six men were the three defendants plus Alberto Ortega-Mena, Denio Miguel Rengifo-Acosta, and a Columbian juvenile who was later deported before indictments were returned.

The rudder hold of the vessel is accessible only from the water and is approximately 6'x 6'x 10'. In the rudder hold, the officers discovered 11 canvas bags containing approximately 850 pounds of cocaine, all secured to the wall with an elaborate rope web. They also discovered personal effects in separate piles, including food, bottled water, flashlights, and a burlap bag containing five loaded handguns. The agents also found five lists, each of which displayed several phone numbers: (1) a list from Torres-Tirado's wallet; (2) a list from Rengifo-Acosta's wallet; (3) a list from Ortega-Mena's wallet; (4) a list from Rivas-Cordova's bag; and (5) a list from an unidentified wallet. The agents found no wallet or identification for Velgar-Vivero or the juvenile.[7] The list from the unidentified wallet duplicated phone numbers from the list found in Torres-Tirado's and Rengifo-Acosta's wallets. The agents ultimately used the phone numbers from Rengifo-Acosta's and Ortega-Mena's wallets to execute controlled deliveries of the cocaine shipment.[8]

When he was retrieved from the water, Rivas-Cordova had a sock full of bullets in his shirt pocket. The agents placed the sock on the dock but Rivas-Cordova grabbed the sock and pitched it into Galveston Bay. Later, inside the Customs office, Rivas-Cordova

---

[7]     The three wallets and Rivas-Cordova's bag contained Columbian identification cards linking them to the defendants.

[8]     The agents never executed controlled deliveries with the remaining numbers because the successful interdiction had become locally newsworthy.

somehow regained possession of the list of phone numbers in his bag and ate it.

The five adult stowaways were indicted on five drug-related charges.  On the eve of the first trial in October 1990, Ortega-Mena and Rengifo-Acosta pled guilty to four counts of the indictment.  Velgar-Vivero, Torres-Tirado, and Rivas-Cordova were convicted of all five counts in the indictment.  We reversed in February 1992 under the Speedy Trial Act.  The defendants then were re-indicted on the same five counts, and trial began in October 1992.  Velgar-Vivero, who was the only defendant to testify in the second trial,[9] stated that he stowed away on the vessel to come to the United States to find work.  He testified that he had been working as a longshoreman loading bananas on to THE SPRING BRIDE when he decided to stow away.  He climbed into the dark rudder hold and fell asleep.  When he awoke, the vessel was underway.

The defendants again were convicted on all five counts. Velgar-Vivero and Torres-Tirado were sentenced to concurrent 235-month sentences on the drug counts and a consecutive 60-month sentence on the gun count.  At sentencing, Rivas-Cordova received an increase in his offense level for obstruction of justice.  He was sentenced to concurrent 292-month terms on the drug counts and a consecutive 60-month sentence on the gun count.  The defendants timely appealed, contesting the sufficiency of the evidence to support their convictions.  Rivas-Cordova also contests the

_____

[9]    None of the defendants testified at the first trial. Further, the two stowaways who pled guilty did not testify at either trial.

assessment at sentencing of the offense level increase for obstruction of justice.

## II. Discussion

### A. Standard of Review

When reviewing the sufficiency of the evidence, we must determine whether, viewing the evidence and the inferences therefrom in a light most favorable to the jury's guilty verdicts, a rational trier of fact could have found these defendants guilty beyond a reasonable doubt. United States v. Rena, 981 F.2d 765, 771 (5th Cir. 1993); United States v. Roberts, 913 F.2d 211, 217 (5th Cir. 1990). Accordingly, we need not be persuaded that the evidence excludes every reasonable hypothesis of innocence. United States v. Brechtel, 997 F.2d 1108, 1116 (5th Cir. 1993). Instead, our function is to measure whether any rational jury could conclude that the government proved beyond a reasonable doubt each element of the offense. Rena, 981 F.2d at 770.

### II. The Conspiracy Count

In a narcotics conspiracy, the government must prove beyond a reasonable doubt that: (1) an agreement existed between two or more persons to violate narcotics laws; (2) each alleged conspirator knew of the conspiracy and intended to join it; and (3) each alleged conspirator participated in the conspiracy. United States v. Maseratti, 1 F.3d 330, 337 (5th Cir. 1993); United States v. Guerra-Marez, 928 F.2d 665 (5th Cir. 1991). In meeting its burden, the government is permitted to use direct or circumstantial evidence, or both, to prove conspiracy. Rena, 981 F.2d at 770.

5

The jury certainly may consider the defendant's presence at the crime scene, *along with other evidence*, in finding a conspiracy, but presence, by itself, is insufficient to prove conspiracy. United States v. Chavez, 947 F.2d 742, 745 (5th Cir. 1987). Granted, one's presence may trigger another's suspicions; but we have stated on numerous occasions that mere suspicion of conspiratorial activity cannot support a guilty verdict. See United States v. Sacerio, 952 F.2d 860, 863 (5th Cir. 1992); United States v. Jackson, 700 F.2d 181, 185 (5th Cir. 1983).

We find sufficient evidence to support the conspiracy convictions of Torres-Tirado and Rivas-Cordova.[10] A conspiratorial relationship between Torres-Tirado and the other narcotics conspirators could have been established from both his presence and his possession of a phone list that included the same number as the list of another participant. Although no number on Torres-Tirado's

---

[10] In Ortega-Mena, the defendants' first appeal, we stated in a footnote that our reversal of the district court did not preclude the government from re-prosecuting the defendants because double jeopardy does not attach when a district court is reversed for noncompliance with the Speedy Trial Act. Ortega-Mena, 949 F.2d at 160 n.4. Had we reversed for insufficient evidence, then double jeopardy would have attached. See Burks v. United States, 437 U.S. 1, 15-17, 98 S. Ct. 2141, 2149-50 (1978) (double jeopardy does not attach when a conviction is reversed unless the reversal is based on insufficient evidence); United States v. Mize, 820 F.2d 118, 120 (5th Cir. 1987). To emphasize this point, we further indicated that sufficient evidence existed at the first trial to convict Velgar-Vivero of the firearms offense. That statement, which was purely dicta, was intended to sanitize the appellate reversal from a double jeopardy defense. It was not intended to be the law of the case, thereby precluding a second appeal from a second conviction. After all, our reversal for noncompliance with the Speedy Trial Act essentially nullified the first trial. Thus, for legal purposes, the instant appeal is the only appeal to date, unaccompanied by law of the case baggage.

list was used to make a controlled delivery of the cocaine, the agents did use phone numbers on Rengifo-Acosta's list to execute a delivery. Both lists included a number that matched that on the unidentified participant's list, thereby implicating all the lists and their possessors. From these facts, a jury reasonably could have concluded that Torres-Tirado knowingly entered into an agreement to violate narcotics laws.

Rivas-Cordova's conduct also is legally sufficient to support a finding of conspiracy. He possessed ammunition of a caliber identical to the caliber of the guns found in close proximity to the drugs. Further, he destroyed the phone list found among his possessions,[11] making it impossible for the agents to use that list to establish his connection to the drugs or to the other participants. His attempts to hinder the investigation support a reasonable inference of guilty knowledge.

Velgar-Vivero's conspiracy conviction is much more troubling. The government asks us to affirm Velgar-Vivero's conviction with evidence that shows only that he was present at the crime scene and subsequently fled from it. We have rejected that argument before, and we reject it again today. See United States v. DeSimone, 660

---

[11] We reject Rivas-Cordova's argument, with respect to both the sufficiency and sentencing issues, that the agents' testimony that he destroyed this evidence was incredible as a matter of law. "We cannot declare testimony incredible as a matter of law unless it is 'so unbelievable on its face that it defies physical laws.'" United States v. Gardea Carrasco, 830 F.2d 41, 44 (5th Cir. 1987) (quoting United States v. McKenzie, 768 F.2d 602, 605 (5th Cir. 1985)). While we concede that it may have been difficult for a handcuffed Rivas-Cordova to destroy evidence in the manner so stated, we do not find that it defies the laws of physics.

F.2d 532, 537 (5th Cir. 1981); United States v. Lopez-Ortiz, 492 F.2d 109, 115 (5th Cir. 1974). Evidence of presence and flight is redundant: one necessarily involves the other. The government must proffer something more, which it failed to do. The government offered no evidence linking Velgar-Vivero to either the cocaine or the guns. Further, the government failed to link him with the phone numbers used to execute controlled deliveries.[12]

Recognizing the dearth of evidence against Velgar-Vivero, the government insists that the jury reasonably could infer that both the unidentified wallet, which contained inculpatory phone numbers, and the fifth gun belonged to Velgar-Vivero. This inference, however, is based solely on Velgar-Vivero's presence in and flight from the rudder hold, which are legally insufficient evidence to establish guilt. While the jury obviously chose not to believe Velgar-Vivero's stowaway defense, their disbelief is not tantamount to proof beyond a reasonable doubt that he agreed to, knew about, and participated in the conspiracy. The government was required to meet that burden with more evidence than exists here. The evidence establishing Velgar-Vivero's presence and flight creates only suspicion. But "[i]t is not enough that the defendant merely

---

[12] We note that the evidence demonstrated that there were _five_ guns found in the hold and _five_ sets of phone numbers, leading us to infer that one of the _six_ persons found in the rudder hold may not have been a participant in the narcotics offenses. The government claims that, because the sixth stowaway was a juvenile, the jury reasonably inferred that the five guns and phone lists necessarily belonged to the five adults, including Velgar-Vivero. The inference that today's juveniles are incapable of participating in gun-related narcotics offenses is unreasonable, not to mention naive.

associated with those participating in a conspiracy, nor is it enough that the evidence places the defendant in a climate of activity that reeks of something foul." United States v. Sacerio, 952 F.2d 860, 863 (5th Cir. 1992). The jury's conclusion that the government proved Velgar-Vivero's guilt beyond a reasonable was unreasonable as a matter of law and, therefore, is reversed.

## II. The Possession and Importation Counts

To convict for possession of cocaine with intent to distribute, the government must prove beyond a reasonable doubt that the defendant (1) possessed cocaine, (2) knowingly, and (3) with the intent to distribute. 21 U.S.C. § 841(a); United States v. Vasquez, 953 F.2d 176, 183 (5th Cir. 1992). The defendant's possession may be either actual or constructive, the latter being defined as "the knowing exercise of, or the knowing power or right to exercise, dominion and control over the proscribed substance." United States v. Gardea Carrasco, 830 F.2d 41, 45 (5th Cir. 1987) (quoting United States v. Vergara, 687 F.2d 57, 61-62 (5th Cir. 1982)). A conviction for possession of cocaine on a vessel requires the government to prove that the cocaine entered the United States aboard a vessel. 21 U.S.C. § 955. Finally, to convict for importation of cocaine, the government must prove that the defendant knowingly participated in bringing cocaine from a foreign country into the United States. 21 U.S.C. § 952(a); United States v. Diaz-Carreon, 915 F.2d 951, 953 (5th Cir. 1990).

Because we find the government's evidence insufficient to convict Velgar-Vivero of narcotics conspiracy, we necessarily find

9

the same evidence insufficient evidence to convict him of the substantive offenses, including the firearms offense. United States v. Galvan, 693 F.2d 417, 420 (5th Cir. 1982); United States v. Gutierrez, 559 F.2d 1278, 1282 (5th Cir. 1977). The government has failed to introduce evidence, circumstantial or otherwise, linking Velgar-Vivero with either the cocaine or the guns. Therefore, we reverse all of his convictions of the substantive offenses.

As to Torres-Tirado and Rivas-Cordova, the government proffered sufficient evidence to convict them of the possession and importation counts. The inculpatory phone lists support an inference of constructive possession, i.e., dominion and control over the cocaine. Further, their constructive possession of several hundred pounds of cocaine justifies a conclusion of intent to distribute. United States v. Prieto-Tejas, 779 F.2d 1098, 1101 (5th Cir. 1986). As to the vessel-related and importation convictions, the defendants, all Colombian nationals, were found in possession of the cocaine on a vessel which had just recently left Colombia and entered the United States.

### III. The Firearms Count

To convict for use of a firearm during a drug trafficking offense, the government must prove that the defendant (1) used or carried (2) a firearm (3) during or in relation to a drug-trafficking crime. 18 U.S.C. § 924(c); United States v. Pigrum, 922 F.2d 249, 255 (5th Cir. 1991). We interpret this provision broadly. See United States v. Ivy, 973 F.2d 1184, 1189

10

(5th Cir. 1992); <u>United States v. Raborn</u>, 872 F.2d 589, 595 (5th Cir. 1989).  The weapon need not be fired or even brandished; we require only that the firearm be available to provide protection to the defendant in the commission of his or her offense.

In this case, the guns were readily "available."  They were loaded and always within the defendant's reach because of the rudder hold's tight confines.  In addition, Rivas-Cordova possessed additional ammunition for the firearms.  The government proffered sufficient evidence such that a reasonable jury could find Torres-Tirado and Rivas Cordova guilty of § 924(c).  But as the firearms charge is collateral to the drug charges and thus cannot stand independently, Velgar-Vivero's firearms conviction necessarily evaporates with our reversal of his drug count convictions.

## IV. Rivas-Cordova's Sentence

The Sentencing Guidelines provide that a district court may increase a defendant's offense level by two points if "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense."  U.S.S.G. § 3C1.1.  The increase is not discretionary.  If the court finds the defendant obstructed justice, it <u>must</u> impose the two point increase.  <u>United States v. Roberson</u>, 872 F.2d 597, 609 (5th Cir. 1989).  The court's finding is factual, meaning we review it only for clear error.  <u>United States v. Edwards</u>, 911 F.2d 1031, 1033 (5th Cir. 1990).  If sufficient evidence exists in the record to

11

support the district court's factual conclusion, we must affirm. Id.

At sentencing in this case, Rivas-Cordova's offense level was increased for obstruction of justice based upon the agents' testimony that he pitched the sock full of bullets into Galveston Bay and chewed to a pulp the list of phone numbers found among his possessions. The district court was entitled to credit the testimony of the customs agents, id., and sufficient evidence exists in the record to buttress their version of events. We accordingly find that the district court did not err in increasing Rivas-Cordova's base offense level by two points.

For the foregoing reasons we AFFIRM the convictions of Jose Antonio Torres-Tirado and Eulices Rivas-Cordova, AFFIRM the sentence of Rivas-Cordova, and REVERSE the convictions of Eccehomo Velgar-Vivero.