**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 95-20813
Summary Calendar
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

VERSUS

JANADRICK KEMONT DRONES

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Texas
(H-95-CR-125-3)
_____

July 2, 1996

Before SMITH, BENAVIDES, and DENNIS, Circuit Judges.

PER CURIAM:[*]

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

I.

The government indicted Janadrick Kemont Drones and several others with conspiracy to possess cocaine base with the intent to distribute, aiding and abetting the possession of cocaine base with intent to distribute, and using and carrying a firearm in relation to a drug-trafficking crime. During Drone's jury trial, the district court granted his motion for a judgment of acquittal regarding the firearms offense, but denied the motion regarding the drug-trafficking claims. The jury subsequently found Drones guilty of committing the drug-trafficking offenses. Several days following the jury's verdict, the district court concluded that its previous ruling denying the motion for judgment of acquittal on the drug-trafficking offenses was erroneous and acquitted Drones of those charges. The government filed a timely notice of appeal to the district court's order of acquittal.

II.

The government argues that the district court erred by granting acquittal for Drones in the drug-trafficking offenses and contends that there was sufficient evidence to support the conclusion of Drones's guilt of the conspiracy and aiding-and-abetting charges beyond a reasonable doubt.

The duty of a district court in ruling on a post-verdict motion for acquittal is to determine, viewing the evidence in the light most favorable to the government, whether the evidence could

be accepted by a jury as adequate and sufficient to support the conclusion of the defendant's guilt beyond a reasonable doubt. *United States v. Sanchez*, 961 F.2d 1169, 1179 (5th Cir.), *cert. denied*, 506 U.S. 918 (1992). An appellate court reviews the trial court's granting of a motion for acquittal *de novo*, applying the same standard as the court below. *Id.* Neither the trial court, nor the appellate court, may substitute its own subjective interpretation of the evidence for that of the jury's. *United States v. Varkonyi*, 611 F.2d 84, 85 (5th Cir.), *cert. denied*, 446 U.S. 945 (1980) (cited by *Sanchez*, 961 F.2d at 1179). However, if the evidence supports equally or nearly equally a theory of innocence, the district court will not have erred in entering a judgment of acquittal. *Sanchez*, 961 F.2d at 1180.

To establish guilty of a drug conspiracy, the government must prove beyond a reasonable doubt the existence of an agreement to possess with intent to distribute an illicit substance, the defendant's knowledge of the agreement, and his voluntary participation in it. *United States v. Lewis*, 902 F.2d 1176, 1180-81 (5th Cir. 1990). It is not necessary for the government to prove an express, explicit agreement; a tacit, mutual agreement will suffice to prove a conspiracy. *United States v. Prieto-Tejas*, 779 F.2d 1098, 1103 (5th Cir. 1986). The government sustains its burden by showing that the defendant was aware of the unlawful agreement and was somehow associated with the plan to promote its

success.  *United States v. Fernandez-Rogue*, 703 F.2d 808, 814-15 (5th Cir. 1983).

A person who associates in a criminal venture, participates in the venture, and engages in conduct designed to make the venture succeed is guilty of aiding and abetting under 18 U.S.C. § 2. *United States v. Murray*, 988 F.2d 518, 522 (5th Cir. 1993). "'Association' means that the defendant shared the criminal intent of the principal. 'Participation' means that the defendant engaged in some affirmative conduct designed to aid the venture." *Id.* When a drug defendant is accused of aiding and abetting possession with the intent to distribute, the government also must prove the above three elements of aiding and abetting with respect to both possession and intent to distribute.  *See United States v. Longoria*, 569 F.2d 422, 425 (5th Cir. 1978).

Gregory Haire, a sergeant investigator with the Texas Department of Public Safety, testified that at approximately 1:00 p.m. on April 25, 1995, he directed two confidential informants (CIs) as they negotiated a purchase of 18 ounces of crack cocaine over the telephone.  The CIs received two phone calls after paging the sellers.  Haire recorded both phone calls.  Haire never obtained the telephone numbers the CIs used to page the crack cocaine sellers.

Haire stated that, at the drug transaction's designated meeting place, he observed Drones sitting in the driver's seat of

4

a 1995 White Mustang convertible, his codefendant, Vernon Paul Freddie (Vernon), sitting in the front passenger seat, and his other codefendant, Arnold Joseph Freddie (Arnold), sitting in the rear of the vehicle. Haire also stated that the drugs were located in the front right floorboard area. Haire testified that when the backup officers came in to make the arrests, Drone moved as if to run, but Haire grabbed him in a choke hold and wrestled him to the ground.

Haire testified that he designated Drones as one of the speakers in the transcripts of the recorded phone calls after he recognized Drones's voice at his arrest as one of the speakers in the taped phone calls. On cross-examination, Haire clarified that he determined Drones was one of the voices on the tapes after Haire had listened to the tapes following Drones's arrest.

Haire also testified that he never obtained a second tape of Drones's voice to allow researchers to definitively determine if Drones's voice was one of the voices in the phone call. Haire stated that, although he could have done more to identify the voices on the tapes, he did not do so because he believed it was not important.

Haire discovered that Violet Walker rented the Mustang from Budget Rental Car but never talked to her to discover to whom she loaned the car. Haire testified that he saw the keys in the ignition when he observed the Mustang, but could not contradict the assertion that they were in Arnold's pocket.

After pleading guilty to the charged drug-trafficking crimes, Vernon testified that he encountered Drones in the parking lot of a Burger King restaurant, and that he had not seen Drones in a year prior to that meeting. Vernon introduced Drones to his brother, Arnold, who was near Vernon's white Mustang. Vernon testified that only his brother and he were in the Mustang when it arrived at the Burger King, and that his brother was driving the car. Vernon and Drones walked to the car to write down Drones's phone number when the CI walked up to the car and got in the driver's seat. After Vernon weighed an ounce of crack cocaine for the CI, the CI got out of the car. At all times, Drones was standing by the back of the car.

After pleading guilty to the drug-trafficking offenses, Arnold testified that his brother introduced him to Drones at the Burger King parking lot. Arnold stated that Drones was standing by the rear of the car when Vernon and the CI got into the front of the car and weighed the crack cocaine. Arnold stated that Drones was still standing by the rear of the car when Haire came up to the Mustang. Arnold affirmed it was his beeper number on the recordings and that he had previously had a telephone conversation with the CI which resulted in the arrangement of a drug transaction, that he knew that a drug transaction was going to occur in the parking lot, and that he was sitting in the backseat of the car to be able to see everything in his role as bodyguard. Arnold specifically testified that Drones was not a party to the

6

drug transaction, that he was not in the car, and that he did not recognize Drones's voice on the tape recordings of the phone calls.

Krisna Brown, Drones's wife, testified that the night previous to Drones's arrest, they had spent the night at a motel. On the tape recordings, one of the CIs told the person Haire identified in the tape as Drones that the CIs were willing to meet at a motel. Brown testified that she left at 8:00 a.m. and spent the rest of the day with Drones at her sister's house, which did not have a phone. Brown testified that Drones left her company at about 4:30 p.m. to get something to eat and that she believed he went to a Burger King.

The government contends that the tape recorded conversations, coupled with Haire's identification of Drones as one of the speakers in the conversations and Arnold's admission that he participated in the taped conversations was sufficient to support a finding that Drones entered into an agreement with Arnold to sell cocaine. The government asserts that Drones's presence at the scene of the transaction corroborated Haire's voice identification and that the jury could infer Drones's knowing participation in the transaction from a cumulation of the factors combined with Drones's presence at the scene and his attempted flight.

This case presents a close question whether the evidence, viewed in the light most favorable to the government, supports Drones's conviction for conspiracy to possess cocaine base beyond a reasonable doubt. Apparently, the jury considered Haire's

testimony, which included his identification of Drones's voice and presence in the car with the drugs, to be more credible than the testimony of Drones's codefendants and alibi witness. This credibility choice must stand. *See Varkonyi*, 611 F.2d at 85. Yet, Haire could not link Drones with the phone numbers used to arrange the drug transaction. *See United States v. Velgar-Vivero*, 8 F.3d 236, 240 (5th Cir. 1993), *cert. denied*, 114 S. Ct. 2715 (1994) (Government's failure to link defendant with phone numbers used to execute drug deal one of factors in reversing conspiracy conviction for insufficient evidence).

However, giving the jury's credibility choices their due weight, the evidence appears to support the jury verdict beyond a reasonable doubt. Haire's testimony demonstrated Drones's involvement in the drug-transaction arrangements with Arnold and placed him in the car with the drugs at the appointed transaction site. Through this testimony the jury could believe that Drones was aware of an unlawful agreement and that he was associated with the plan to promote his success. *See Fernandez-Rogue*, 703 F.2d at 814-15. Because the evidence, accepted by the jury as adequate, was sufficient to support the conclusion of Drones's guilt beyond a reasonable doubt, the district court erred by granting Drones's motion for a judgment of acquittal. *See Sanchez*, 961 F.2d at 1179. *See Varkonyi*, 611 F.2d at 85.