**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.                                                                                      No. 95-5767

JEFFREY MAURICE YOUNG-BEY,
<u>Defendant-Appellant.</u>

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Leonie M. Brinkema, District Judge.
(CR-95-148-A)

Submitted: March 31, 1997

Decided: April 28, 1997

Before WIDENER, HALL, and WILLIAMS, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Robert Stanley Powell, Arlington, Virginia, for Appellant. Helen F.
Fahey, United States Attorney, John J. Farley, Special Assistant
United States Attorney, Alexandria, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Jeffrey Maurice Young-Bey was convicted by a jury of four counts of bank fraud, 18 U.S.C. § 1344 (1994), and was subsequently sentenced to ninety-six months imprisonment. Young-Bey appeals his conviction on the ground of insufficient evidence. He also claims that the district court abused its discretion by departing upward under USSG § 4A1.3 (Adequacy of Criminal History Category)* and in failing to explain the extent of the departure. We affirm.

On July 13, 1994, Young-Bey deposited a check for $8,900 in Clarence Warren's account at the State Department Federal Credit Union (Credit Union). Warren, an old friend of Young-Bey's, gave Young-Bey permission to make the deposit as a favor and allowed Young-Bey to use his ATM card to make cash withdrawals afterward. Young-Bey then deposited another check, this time for $75,000, in Warren's account without first obtaining Warren's permission. Both checks were drawn on closed bank accounts of the East Potomac Mortgage Funding Group (East Potomac), a dummy corporation Young-Bey had set up. Warren withdrew approximately $24,610 from his account for Young-Bey before the Credit Union froze the account.

In September 1994, Young-Bey stayed for a few days with another friend, Ricardo McCown. He persuaded McCown to let him make a deposit in McCown's account at a different branch of the Credit Union. On September 12, 1994, Young-Bey deposited an East Potomac check for $12,500 in McCown's account. By this time the Credit Union was aware that checks on East Potomac accounts were suspicious. When Young-Bey asked McCown to check the balance in his account using his ATM card, the additional funds were shown as pending but unavailable. On September 14, 1994, Young-Bey attempted to deposit a second East Potomac check for $12,500 in McCown's Credit Union account. The teller had been warned about checks drawn on that account and notified the assistant manager.

_____
*United States Sentencing Commission, Guidelines Manual (Nov. 1994).

2

While the assistant manager was trying to verify the check, Young-Bey left the Credit Union without completing the transaction. Neither the teller nor the assistant manager could make an in-court identification of Young-Bey, but the jury was able to view photographs of the man with whom they dealt that were taken by the Credit Union's security cameras.

The next day, Young-Bey was arrested for an unrelated theft by a state police officer and his car was searched. Officers searching the car found Ricardo McCown's Credit Union statement, as well as several East Potomac checks which had a stamped signature and the signature stamp. In February 1995, Young-Bey was arrested for bank fraud. He identified himself as Ricardo Ware and was carrying identification with that name but with his own photograph. The investigating Secret Service agent subsequently tried to obtain handwriting samples from Young-Bey. Young-Bey first provided disguised handwriting samples and then refused to cooperate.

Young-Bey argues that the evidence was insufficient to convict him of bank fraud because it was circumstantial. He contends that no physical evidence connected him to the offenses charged in the indictments. He also maintains that the Credit Union did not suffer any loss in connection with Counts Three and Four because no funds were withdrawn from McCown's account.

"To sustain a conviction the evidence, when viewed in the light most favorable to the government, must be sufficient for a rational trier of fact to have found the essential elements of the crime beyond a reasonable doubt." United States v. Brewer , 1 F.3d 1430, 1437 (4th Cir. 1993); accord Glasser v. United States, 315 U.S. 60, 80 (1942). An appeals court may consider direct and circumstantial evidence and allow the government the benefit of all reasonable inferences from the facts proved to the facts sought to be established. United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir. 1982). Even if some facts support a contrary conclusion, this Court does not weigh the evidence or judge the credibility of witnesses. United States v. Reavis, 48 F.3d 763, 771 (4th Cir.), cert. denied, #6D6D 6D# U.S. ___, 63 U.S.L.W. 3890 (U.S. June 19, 1995) (No. 94-9316).

The bank fraud statute provides that:

3

> Whoever knowingly executes, or attempts to execute, a scheme of artifice--
>
> (1) to defraud a financial institution; or
>
> (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises; shall be fined . . . or imprisoned.

18 U.S.C.A. § 1344.

We find that the evidence amply supports Young-Bey's bank fraud conviction. Given that the jury found Warren and McCown to be credible witnesses, there was substantial evidence that Young-Bey deposited or caused the deposit of four checks totalling $108,900 in two Credit Union accounts, knowing that the checks were drawn on closed accounts, with the intent of defrauding the Credit Union, and that he succeeded in fraudulently obtaining $24,610 from Warren's account. We therefore affirm Young-Bey's conviction.

At sentencing, the district court calculated a total offense level of 16 and determined that Young-Bey had 25 criminal history points, which placed him in category VI, producing a sentencing range of 46-57 months. Both the probation officer and the Government suggested an upward departure under USSG § 4A1.3 in view of Young-Bey's prior convictions for various kinds of fraud, including two federal bank fraud convictions. In addition, just before his arrest he had swindled a lady out of $500 and her Mercedes under the guise of running a debt consolidation service. The Government argued that there was a high probability that Young-Bey would commit other crimes whenever possible. At sentencing, the district court adopted the Government's suggestion to increase Young-Bey's total offense level five points to 21 (resulting in a new guidelines range of 77-96 months) and imposed a sentence of ninety-six months.

Young-Bey maintains that the district court failed to provide a justification for the five-level departure above category VI and failed to

4

explain why a departure to one of the intervening levels would not have adequately reflected the seriousness of his past criminal conduct. His first claim is without merit. A criminal history which is more serious than the average defendant in the same category is an encouraged factor under the guidelines. See USSG § 4A1.3. Young-Bey's numerous prior convictions, his 25 criminal history points, and his generally fraudulent behavior provided ample reason for a departure above category VI.

In departing upward by increasing the total offense level, the district court followed a procedure approved by this court. See United States v. Harrison, 58 F.3d 115, 118 (4th Cir. 1995) (following United States v. Cash, 983 F.2d 558, 561 & n.6 (4th Cir. 1992); United States v. Rusher, 966 F.2d 868, 884 (4th Cir. 1992)). Young-Bey argues that the court failed to make the necessary level-by-level findings. See Harrison, 58 F.3d at 118. The district court departed by five levels without making a specific determination that each of the intervening levels was inadequate, but did state that it had considered each of the lower sentencing ranges.

On balance, we are satisfied that the court complied with Harrison, Cash, and Rusher and considered the intervening offense levels and sentencing ranges and found none of them adequate.

We therefore affirm Young-Bey's conviction and sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

5