**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.                                                                No. 96-4124

BILLY HICKS WILLIAMS,
<u>Defendant-Appellant.</u>

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.

                                                                 No. 96-4425

LESTER DEWAYNE LANGLEY, a/k/a
Deadeye,
<u>Defendant-Appellant.</u>

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.                                                                No. 96-4572

JOHNNY BRUCE STACY, a/k/a Sadie,
<u>Defendant-Appellant.</u>

Appeals from the United States District Court
for the Western District of North Carolina, at Shelby.
Lacy H. Thornburg, District Judge.
(CR-94-37)

Argued: August 14, 1997

Decided: January 15, 1998

Before RUSSELL and HALL, Circuit Judges, and MICHAEL,
Senior United States District Judge for the
Western District of Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Milton Gordon Widenhouse, Jr., Assistant Federal Public
Defender, Raleigh, North Carolina, for Appellant Langley; Stanford
K. Clontz, BALEY, BALEY & CLONTZ, P.A., Asheville, North
Carolina, for Appellant Williams; Charles Robinson Brewer, Ashe-
ville, North Carolina, for Appellant Stacy. Deborah Ann Ausburn,
Assistant United States Attorney, Asheville, North Carolina, for
Appellee. **ON BRIEF:** Mark T. Calloway, United States Attorney,
Asheville, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

The Appellants, Billy Hicks Williams, Lester DeWayne Langley
and Johnny Bruce Stacy, appeal their convictions and sentences for
their roles in a conspiracy to transport staggering quantities of mari-
juana from Texas to North Carolina. The operation started small. The
initial shipments arrived from Rio Grande City, Texas, to Rutherford
County, North Carolina, in door panels of cars, specially outfitted
pick-ups, and gas tanks. Under the leadership of Jerry Dean Early, Sr.
and his nephew, Kyle Beard, the organization grew steadily. After
several years, the marijuana was arriving in North Carolina in

2

eighteen-wheel tractor-trailers up to 1000 pounds at a time. Not surprisingly, an undertaking of this scale required numerous co-conspirators, and the appellants each filled numerous roles in the operation.

The appellants were indicted on one count of conspiracy to distribute marijuana in violation of 21 U.S.C. § 846 (1994). Williams and Langley were also indicted on two counts of possession with intent to distribute marijuana in violation of 21 U.S.C.§ 841(a)(1) (1994). At a joint trial involving two other co-conspirators, a jury returned a guilty verdict for all three with regard to the conspiracy charge, but acquitted both Williams and Langley of the possession count. At sentencing, the district court declined to find that Williams was entitled to a reduction under U.S. Sentencing Guidelines Manual § 3B1.2 (1995). The district court found that Langley was subject to a three-level enhancement under USSG § 3B1.1. Appellants appeal their convictions, and Williams and Langley assign error to their sentences.

In challenging their convictions, all three apellants join in the argument that at trial, the Government engendered a"fatal" variance between the single conspiracy charged in the indictment and the evidence of multiple conspiracies they contend the Government actually proved. See Kotteakos v. United States, 328 U.S. 750, 756-57 (1946). Such a variance jeopardizes the safeguards for individualizing each defendant in relation to the mass. Id. at 773. Our system of criminal justice does not tolerate mass trial, as "[t]hat way lies the drift toward totalitarian institutions." Id. It is with this principle in mind that we consider the appellants' claim that their trial amounted to a mass conviction based on evidence of multiple conspiracies not charged in the indictment.

In challenging a conspiracy conviction, an appellant"may establish the existence of a material variance by showing that the indictment alleged a single conspiracy but that the government's proof at trial established the existence of multiple, separate conspiracies." United States v. Kennedy, 32 F.3d 876, 883 (4th Cir. 1994). Whether the evidence shows a single conspiracy or multiple conspiracies is, however, a question of fact and is properly the province of the jury. See United States v. Banks, 10 F.3d 1044, 1051 (4th Cir. 1993); United States v. Urbanik, 801 F.2d 692, 695 (4th Cir. 1986). Where a jury is properly

3

instructed regarding a single versus multiple conspiracies, a finding of a single conspiracy must stand unless the evidence, taken in the light most favorable to the Government, would not allow a reasonable jury to reach such a conclusion. See United States v. Camps, 32 F.3d 102, 104 (4th Cir. 1994). Moreover, the variance provides grounds for disturbing the verdict "`only if the appellant shows that the variance infringed his `substantial rights' and thereby resulted in actual prejudice.'" United States v. Ford, 88 F.3d 1350, 1360 (4th Cir.) (quoting Kennedy, 32 F.3d at 883), cert. denied, ___ U.S. ___, 65 U.S.L.W. 3369 (U.S. Nov. 18, 1996) (No. 96-6379). "To show actual prejudice, an appellant must demonstrate that the multiple conspiracy variance created a spillover effect, such that `the jury was likely to transfer evidence from one conspiracy to a defendant involved in an unrelated conspiracy.'" Id. Here, the record discloses sufficient evidence for a reasonable jury to find the appellants guilty of participating in a single conspiracy.

"A single conspiracy exists where there is `one overall agreement,' or `one general business venture.' Whether there is a single conspiracy or multiple conspiracies depends upon the overlap of key actors, methods, and goals." United States v. Leavis , 853 F.2d 215, 218 (4th Cir. 1988) (citations omitted). In light of the standard we must employ, the evidence would allow a reasonable jury to conclude that there was a single conspiracy. That conspiracy existed for the purpose of bringing marijuana from its source in Texas over the highways in trucks to be received and distributed by an organization constructed by Kyle Beard and Jerry Dean Early, Sr. That "general business venture" guided by the two common actors for a single goal is sufficient to provide a reasonable jury with evidence to conclude that a single conspiracy existed.

Appellants' attempts to describe multiple conspiracies are unavailing, as they rely on interpretations of the evidence made in something less than a light most favorable to the guilty verdicts. See Camps, 32 F.3d at 104. In addition, the fact that the jury acquitted the appellants on the substantive offense does not demonstrate a material variance or significant jury confusion as the appellants suggest. The verdict shows that the jury found the evidence of the substantive offense lacking, but does not prove that the government's evidence pointed inescapably to the existence of proof of multiple conspiracies with

4

resultant jury confusion. Finally, even assuming a variance in the proof, the appellants have failed to identify any substantial "spillover" of evidence that would provide the basis for the "actual prejudice" necessary to find these convictions unsound. See Ford, 88 F.3d at 1360-61. Without this "actual prejudice," there is no ground for overturning these convictions.

Appellants also assign error to the district court's decision to restrict the cross-examination of a government witness regarding the efforts of co-conspirators to implicate the witness's sister in the conspiracy. Specifically, the district court declined to allow the witness to respond to a question regarding the co-conspirators' motivation for implicating the sister. Restrictions on the scope of cross-examination are within the sound discretion of the trial judge, and trial courts are generally given wide latitude to set reasonable limits to prevent harassment, prejudice, or confusion of the issues. See United States v. Ambers, 85 F.3d 173, 176 (4th Cir. 1996); United States v. McMillon, 14 F.3d 948, 956 (4th Cir. 1994). An abuse of that discretion occurs when the court fails or refuses to exercise its discretion or when the court's exercise of discretion is flawed by an erroneous legal or factual premise. See James v. Jacobson , 6 F.3d 233, 239 (4th Cir. 1993).

The district court's decision to disallow the answer to defense counsel's question did not amount to an abuse of discretion. Counsel had ample opportunity to cross-examine the witness to attack his credibility. Counsel elicited internally inconsistent testimony and testimony that tended to show that the witness had the opportunity to coordinate his testimony with that of the other Government witnesses in an attempt to provide testimony more likely to result in leniency from the Government in sentencing. In addition, co-counsel elicited testimony that the witness had not initially implicated Langley or Williams, but remembered their involvement later. Through the witness's direct testimony, the jury was aware that the witness was a convicted felon who received a sentence reduced by five years because of the Government's intervention on his behalf. Moreover, the witness had previously responded that he did not know specifically who had implicated his sister. Therefore, any testimony regarding the motivation of these unknown persons would be speculation of the highest

5

order. The district court did not abuse its discretion in limiting the cross-examination of the witness on this front.*

Similarly, the district court did not abuse its discretion in refusing to allow another witness to answer a question regarding the witness's reason for warning Langley to stay away from Early. The appellants suggest only that the answer to the question would have been relevant to the proceedings. The witness had already testified that he warned Langley away from Early because of Early's "reputation." The district court did not abuse its discretion in excluding counsel's attempt to elaborate for the witness in the form of a question.

Next, Stacy contends that the district court erred in denying his motion for a new trial based on the "discovery" of a recording of a conversation involving Stacy, his wife, Beard and his wife. After the trial, Stacy's wife and friends reviewed more than one hundred hours of recordings made by the Government during the course of the investigation. Although the Government had made the recordings available to defense counsel, the Government provided no assistance in locating the tapes on which Stacy's voice appeared. Stacy's wife and friends discovered one recording involving Stacy. It is that discovery that Stacy contends required a new trial.

Stacy argued in his motion that the recording of the discussion warranted a new trial because it was the only time he had been recorded and the conversation contained no reference to the distribution of marijuana. The district court denied the motion. A district court should only grant a motion for a new trial based on newly discovered evidence if: (1) the evidence is newly discovered; (2) the court may infer diligence on the part of the movant in discovering the evidence from the facts alleged; (3) the evidence relied upon is not merely cumulative or impeaching; (4) the evidence is material to the issues involved; and (5) the evidence would probably result in acquittal at a new trial. See United States v. Singh, 54 F.3d 1182, 1190 (4th Cir. 1995). This Court reviews a district court's denial of a motion for new

_____

*In two footnotes to their brief, the Appellants assign error to two additional evidentiary rulings on the part of the district court. Because they have failed to advance a sufficient argument regarding these claims, they do not provide us with reason to disturb the district court's rulings.

6

trial based on newly discovered evidence for abuse of discretion. <u>See</u> <u>id.</u> There is no question that the district court exercised its discretion, and no evidence that the court applied either erroneous factual or legal premises. <u>See James</u>, 6 F.3d at 239.

Stacy endeavors to show that the district court abused its discretion by failing to hold a hearing on the motion for a new trial. However, even assuming that the existence of a single conversation between Beard and Stacy during which they did not discuss the enormous marijuana operation is the type of evidence contemplated by Fed. R. Crim. P. 33, it simply strains credulity to suggest that the introduction of the tape of this discussion would result in an acquittal at a new trial. The fact that Stacy could be heard only once on the surveillance tapes is not likely to lead a jury to ignore the other evidence implicating Stacy and acquit him. The district court did not abuse its discretion in denying the motion for a new trial.

To the extent that Stacy attempts to cast this issue as a violation of the precepts of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), it is similarly unavailing. Under <u>Brady</u>, the "[s]uppression of exculpatory evidence by the Government that is material to the outcome of a trial" is violative of the Due Process Clause of the Constitution. <u>United States v.</u> <u>Kelly</u>, 35 F.3d 929, 936 (4th Cir. 1994). The strictures of <u>Brady</u> are not violated, however, if the information allegedly withheld by the prosecution was reasonably available to the defendant. As we held in <u>United States v. Wilson</u>, "where the exculpatory information is not only available to the defendant but also lies in a source where a reasonable defendant would have looked, a defendant is not entitled to the benefit of the <u>Brady</u> doctrine." 901 F.2d 378, 381 (4th Cir. 1990). Here, the information was contained in the Government's open file and the tapes were readily available to the defense team. It would have been time-consuming, but not unreasonable, for counsel to scour the fruits of the Government's surveillance for evidence that either tended to implicate or exculpate his client. Stacy's wife was able to discover the conversation, but she was unfortunately motivated to search the tapes only after her husband was convicted. The fact that the Government would not undertake this time-consuming task for the defense does not transform this situation into a <u>Brady</u> violation. The innocuous nature of the evidence which was not placed before the jury as a result of the incomplete search of the audio tapes belies any

7

suggestion that the evidence would have been material to the jury's verdict with respect to Stacy. The district court committed no error in denying the motion for new trial.

Both Williams and Langley suggest the district court erred in reaching the applicable offense level for the purpose of sentencing them under the Guidelines. Williams attacks the district court's denial of his motion for a reduction as a minimal or minor participant in the conspiracy under USSG § 3B1.2. A district court may grant a two-level reduction to a defendant who "is less culpable than most other participants, but whose role could not be described as minimal." USSG § 3B1.2, comment. (n.3). The court's determination is "heavily dependent upon the facts of the particular case," USSG § 3B1.2, comment. (backg'd), and is reviewed for clear error. See United States v. Reavis, 48 F.3d 763, 768 (4th Cir. 1995). The defendant has the burden of convincing the court by a preponderance of the evidence that he is entitled to the adjustment. Id. at 769.

There was no clear error in the district court's finding that Williams failed to meet that burden. "A finding is `clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948). The evidence leaves no such conviction in this case. The evidence at trial showed that Williams helped haul, store, unload and deliver large quantities of marijuana. Williams also was responsible for moving transfer trucks to new hiding locations. In light of this level of involvement in the conspiracy, the district court's refusal to grant a reduction was not clearly erroneous.

Similarly, Langley challenges the district court's decision to impose an enhancement for his role as a manager or supervisor in a conspiracy involving five or more participants. USSG§ 3B1.1(b). As with the reduction for minimal participation, the district court's findings of fact concerning a § 3B1.1 adjustment must be affirmed unless they are clearly erroneous. See United States v. Smith, 914 F.2d 565, 569 (4th Cir. 1990). In light of that standard, there was no error in applying the enhancement. The leaders of the conspiracy both agreed that Langley oversaw unloading and distribution operations including responsibility for ascertaining the quantity of marijuana received. In

8

addition, the evidence showed that on several occasions Langley was responsible for planning the lodging for truck drivers transporting marijuana from Texas to North Carolina. The evidence is sufficient to support the enhancement and is not overridden by Langley's inferences drawn from isolated references to the transcript. See United States v. Hyppolite, 65 F.3d 1151, 1159 (4th Cir. 1995), cert. denied, ___ U.S. ___, 64 U.S.L.W. 3708 (U.S. Apr. 22, 1996) (No. 95-8395).

Finding no error either at trial or in sentencing, we affirm the convictions and sentences.

AFFIRMED

9