**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                          No. 98-4321

PERNELL JEFFREY SELLERS,
Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of West Virginia, at Martinsburg.
W. Craig Broadwater, District Judge.
(CR-97-20)

Submitted: March 31, 1999

Decided: August 17, 2000

Before WIDENER, NIEMEYER, and MICHAEL, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Harry A. Smith, III, JORY & SMITH, Elkins, West Virginia, for
Appellant. William D. Wilmoth, United States Attorney, Zelda E.
Wesley, Assistant United States Attorney, Clarksburg, West Virginia,
for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

**OPINION**

PER CURIAM:

Pernell Jeffrey Sellers appeals his conviction for cocaine conspiracy (21 U.S.C. § 846 (1994)), killing or causing a killing in furtherance of a continuing criminal enterprise (21 U.S.C.A. § 848(e) (West Supp. 1998)), interstate travel in aid of racketeering (18 U.S.C. §§ 1952, 2 (1994)), and using or carrying a firearm during a crime of violence (18 U.S.C.A. § 924(c) (West Supp. 1999), 18 U.S.C. § 2 (1994)), and the life sentence he received. He contests his convictions on the grounds that the district court's jury instruction on killing in furtherance of a continuing criminal enterprise was a constructive amendment of the indictment and that the evidence was insufficient. He challenges his sentence by asserting that two criminal history points were incorrectly assigned for commission of the offense while under a sentence of unsupervised probation, see U.S. Sentencing Guidelines Manual § 4A1.1(d) (1997), and that the district court clearly erred in finding that he had more than a minimal or minor role in the offense, see USSG § 3B1.2. We affirm.

During 1996, Sellers sold crack for Eric Turner in Maryland and West Virginia. On October 26, 1996, Turner and Sellers were in Shepherdstown, West Virginia, when a crack user, Jennifer Folmar, was shot and stabbed to death. Summarized in the light most favorable to the government, see Glasser v. United States, 315 U.S. 60, 80 (1942), the evidence at trial showed that, on the day she died, Folmar bought crack on Ray Street from Henry Lee Grantham in the morning. Grantham got the crack from Turner, who conducted the transaction out of Folmar's sight because he did not trust her. Folmar returned in the evening to buy more crack, but Henry Lee Grantham was not home. Folmar bought $20 worth of crack from another person and then sat in her car, a white Camaro. Her presence bothered a number of people who were out on the street, including Turner, who believed her to be an informant. Denise Grantham, Turner's girlfriend, asked Folmar to leave. Folmar drove to the end of Ray Street, turned the corner, and parked her car on the left side of German Street.

Julian Pace rode his bicycle down the hill and Turner, wearing a distinctive white leather coat, jumped on the bike and rode down with

2

him. Stopping near the Camaro, Pace saw Turner pull a surgical glove from his pocket, put it on, and shoot Folmar twice. Pace and Turner then went back up Ray Street. Denise Grantham heard the shots but did not see Turner go down the street or return. After Turner appeared and talked to Denise for a while, Sellers came up. He said to Turner, "When you sing someone a lullaby, aren't you supposed to put them to sleep?" and told Turner that Folmar was still alive. She said Sellers and Turner then walked down the street together and came back a short while later, after which Turner went into the house and washed something at the kitchen sink. Denise testified that Turner gave a pair of gloves to Phillip Kidrick and told him to get rid of them.

Richard Pannell testified at trial that, shortly after he heard the first two shots, Sellers came to him and asked if he had a razor blade. Julian Pace testified that, a little while after he watched Turner shoot Folmar, he heard Turner ask Sellers whether he still had the razors. When Sellers answered that he did, Turner and Sellers went down the hill toward Folmar's car. As they went, Pace said Turner said he was going to finish what he had started. Pace then heard more gunshots.

A police patrol car drove up Ray Street just after the second shots were fired. The police noticed Folmar's car parked on the wrong side of German Street and one of the officers saw a man walking up the hill in a white leather coat who made a throwing gesture as the police car passed. The police turned around at the end of the street, went back to the intersection where Folmar was parked, stopped to check on her car, and discovered that she was dying of bullet and knife wounds. They subsequently found a bloody white leather jacket on the porch of the house where Turner and Denise Grantham were visiting, and a .25 caliber handgun in the area where they had seen Turner make a throwing motion. Gunshot residue and a mixture of Turner's and Folmar's blood were on the right sleeve of the jacket and Folmar's blood was on the gun. Turner's fingerprint was on the driver's side front window of the Camaro.

The three bullets removed from Folmar's body came from the .25 caliber handgun, which belonged to Sellers. One witness testified at trial that he saw Sellers give a gun to Turner on the day of the murder. The same witness said that, after the first shots were fired, he went down the hill to Folmar's car where several people had gathered. Sell-

3

ers came by, asked if Folmar was dead, and was told she was still alive. After the murder, Sellers, Turner, and Denise Grantham all traveled to Maryland. Denise testified that, a few days later, she heard Sellers and Turner discussing the murder and that it was her understanding from the conversation that Turner shot Folmar and Sellers stabbed her.

Not all the witness testimony was consistent with this account. John Marshall Grantham testified that, while he was sitting on a wall on German Street, he saw Sellers shoot into the white Camaro. However, two defense investigators testified that, from that spot 345 feet from where the Camaro was parked, they could not recognize an individual at night. Ronald Lee Kidrick testified that Sellers was with him on Ray Street when the second series of shots was fired. During cross-examination of a number of witnesses, defense counsel established that their testimony was inconsistent with prior statements or that their prior statements failed to mention details provided at trial.

I. Jury Instruction

Count Three of the indictment charged that Sellers"did unlawfully kill and did cause the intentional killing" of Folmar. The district court instructed the jury that they could convict Sellers if they found that he had killed Folmar or caused her killing, or if he had "counseled, commanded, induced, or procured" the killing. The additional language is contained in § 848(e),[1] but was not included in the indictment. Following his conviction, Sellers moved for a new trial, asserting, among other things, that addition of the"counseled, commanded, induced, or procured" language in the jury instruction for Count Three amounted to a constructive amendment of the indictment.[2] The district court denied the motion.

_____

[1] The statute prescribes a penalty of 20 years to life for anyone who, while engaged in a continuing criminal enterprise,"intentionally kills or counsels, commands, induces, procures, or causes the intentional killing of an individual and such killing results." 21 U.S.C.A. § 848(e).
[2] Sellers also argued that the inclusion of this language was an impermissible aiding and abetting instruction, but has abandoned this argument on appeal.

4

When the government or the court "broadens the possible bases for conviction beyond those included in the indictment, a constructive amendment occurs which is per se reversible error." United States v. Ellis, 121 F.3d 908, 923 (4th Cir. 1997), cert. denied, ___ U.S. ___, 66 U.S.L.W. 3457 (U.S. Jan. 12, 1998) (No. 97-7095). Relying on United States v. Floresca, 38 F.3d 706 (4th Cir. 1994), Sellers argues that the inclusion in the jury instruction on Count Three of language from the statute which was not charged in the indictment exposed him to "uncharged allegations" which his defense had not addressed. In Floresca, the district court instructed the jury that it could convict if it found the defendant guilty under subsection (b)(1) or (b)(3) of 18 U.S.C.A. § 1512(b) (West Supp. 1998). Only subsection (b)(1) was charged in the indictment, and subsection (b)(3) proscribed a separate crime. See Floresca, 38 F.3d at 710 n.9. This Court found that the instruction constructively amended the indictment by allowing the jury to convict the defendant on a charge not made in the indictment. See id. 38 F.3d at 711. Sellers also likens himself to the defendant in United States v. Downer, 143 F.3d 819, 822 (4th Cir. 1998), where a constructive amendment occurred when the trial judge substituted another offense for the one charged in the indictment after it was discovered that the charged offense did not come into law until after the offense was committed.

In this case, however, the additional language in the jury instruction did not charge a separate crime or a different crime from the one charged in the indictment. Moreover, "causing" a killing is a broader charge than "counseling, commanding, inducing or procuring" a killing. Sellers was on notice that he could be convicted on evidence of his direct or indirect involvement in the murder. Therefore, no constructive amendment occurred.

II. Sufficiency of the Evidence

Sellers does not contest his conviction for conspiracy to possess cocaine with intent to distribute (Count Two). He contends that the evidence was insufficient to convict him of killing or causing the killing of Folmar in furtherance of a continuing criminal enterprise (Count Three), traveling from Maryland to West Virginia to carry on a drug business and then killing Folmar to further the drug business (Count Four), and of the resulting § 924(c) charge (Count Five). A

5

conviction must be upheld if, viewing the evidence in the light most favorable to the government, a rational jury could find substantial evidence to support the conviction. See Glasser v. United States, 315 U.S. 60, 80 (1942); United States v. Burgos, 94 F.3d 849, 857 (4th Cir. 1996). The appeals court does not independently weigh the evidence or judge the credibility of witnesses. See United States v. Reavis, 48 F.3d 763, 771 (4th Cir. 1995). Of course, if the government's evidence is weak and the contrary evidence is strong, the reviewing court may find that substantial evidence was lacking. See United States v. Giunta, 925 F.2d 758, 768 (4th Cir. 1991).

While Sellers' evidence cast doubt on the testimony of the one witness who recounted seeing Sellers shoot Folmar, Denise Grantham's testimony provided a sufficient basis for Sellers' conviction on Counts Three and Four. In addition, the evidence that Sellers caused the knife attack on Folmar was substantial because two witnesses testified that Sellers was looking for a knife (or razor) just before he accompanied Turner to Folmar's car. Sellers argues that he was not important enough in Turner's drug business to have acted in furtherance of the enterprise. However, a number of witnesses testified that Sellers was Turner's right-hand man for drug dealing.

Finally, Sellers maintains that there was no evidence that the killing had any connection to furthering the criminal enterprise. This argument flies in the face of evidence that Turner thought Folmar was working for the police and had an interest in getting rid of her for that reason. Substantial evidence thus supports Sellers' convictions on Counts Three and Four. Because there was also substantial evidence that he aided and abetted Turner's use of a firearm to kill Folmar, Sellers' challenge to his conviction on the § 924(c) charge (Count Five) necessarily fails.

III. Criminal History

Two criminal history points are given if the defendant committed the instant offense while under "a criminal justice sentence." See USSG § 4A1.1(d). The commentary to § 4A1.1 specifies that a criminal justice sentence must have a custodial or supervisory component, but that active supervision is not necessary and that unsupervised probation is considered a criminal justice sentence. See USSG § 4A1.1, comment. (n.4). See also United States v. LaBella-Szuba, 92 F.3d

6

136, 138 (2d Cir. 1996) (power to revoke conditional discharge is supervisory component); United States v. Kimberlin, 18 F.3d 1156, 1160 (4th Cir. 1994) (affirming addition of two points for commission of offense while on unsupervised probation). Sellers argues that his sentence of unsupervised probation did not include a custodial or supervisory component. Because his probation was subject to revocation for violation of the conditions imposed, his argument is without merit.

IV. Role

A defendant may have a minimal role in the offense if he made only a small contribution to it and had little understanding of it. See USSG § 3B1.2, comment. (n.1). He may have a minor role if he is less culpable than "most other participants," but has more than a minimal role. USSG § 3B1.2, comment. (n.4). A defendant has the burden of showing that he had a mitigating role of any sort. See United States v. Reavis, 48 F.3d 763, 869 (4th Cir. 1995). However, the court should not only compare the defendant's conduct to that of other participants, but "measure . . . [it] against the elements of the offense of conviction." Id. (quoting United States v. Daughtrey, 874 F.2d 213, 216 (4th Cir. 1989)).

Sellers argues that he was less culpable than Turner in the murder (the most important offense for sentencing purposes), and qualified for a mitigating role adjustment because the evidence of his active involvement was not credible. The district court found that Sellers had not met his burden of proof. We agree. Sellers was convicted of either participating in the killing or causing it. There was evidence that he urged Turner to finish Folmar off after she survived the first shooting and that he personally stabbed Folmar. Sellers provided no further evidence of his role at sentencing. Consequently, denial of a minor role adjustment was not clear error.

We therefore affirm the conviction and sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

7