**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

**GROUP ONE**

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.                                                    No. 97-4414

BENNY JUSTUS,
<u>Defendant-Appellant.</u>

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.                                                    No. 97-4415

LAWRENCE EDWARD JUSTUS,
<u>Defendant-Appellant.</u>

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.                                                    No. 97-4416

JIMMY LEE MCCOY,
<u>Defendant-Appellant.</u>

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.                                                    No. 97-4436

MELISSA MCCOY,
<u>Defendant-Appellant.</u>

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                          No. 97-4513

PHYLLIS MCCOY,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                          No. 97-4534

KIRBY COLEMAN,
Defendant-Appellant.

_____

**COUNSEL**

**ARGUED:** Birg Eugene Sergeant, Pennington Gap, Virginia; James Douglas Fleenor, Bristol, Virginia, for Appellants. Steven Randall Ramseyer, Assistant United States Attorney, Abingdon, Virginia, for Appellee. **ON BRIEF:** Herbert H. Clay, Marion, Virginia, for Appellant Benny Justus; John P. Bradwell, SHORTRIDGE & SHORTRIDGE, Norton, Virginia, for Appellant Melissa McCoy; Charles L. Bledsoe, BLEDSOE & MCAFEE, Big Stone Gap, Virginia, for Appellant Coleman; Robert A. Vinyard, Abingdon, Virginia, for Appellant Phyllis McCoy. Robert P. Crouch, Jr., United States Attorney, Abingdon, Virginia, for Appellee.

2

**GROUP TWO**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                        No. 97-4489

TONY MATNEY,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                        No. 97-4494

TERRY EDWARD MCCOY,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                        No. 97-4495

J. B. SLONE,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                        No. 97-4514

DANIEL THOMAS MCCOY,
Defendant-Appellant.

3

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                    No. 97-4515

HAROLD MCCOY,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                    No. 97-4531

ROGER MCCOY,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                    No. 97-4532

WILBERT MCCOY,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                    No. 97-4631

LEANDER SLONE,
Defendant-Appellant.

_____

**COUNSEL**

**ARGUED:** Dennis Eugene Jones, Lebanon, Virginia, for Appellants.
Steven Randall Ramseyer, Assistant United States Attorney, Abing-

4

don, Virginia, for Appellee. **ON BRIEF:** Robert P. Crouch, Jr., United States Attorney, Abingdon, Virginia, for Appellee.

**GROUP THREE**

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.                                                                    No. 97-4609

JIMMY STEWART JUSTICE,
<u>Defendant-Appellant.</u>

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.                                                                    No. 97-4627

ARNOLD LESTER,
<u>Defendant-Appellant.</u>

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.                                                                    No. 97-4628

JOSEPHINE LESTER,
<u>Defendant-Appellant.</u>

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.                                                                    No. 97-4629

SANFORD STEVEN LESTER,
<u>Defendant-Appellant.</u>

5

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

No. 97-4630

CARL HAROLD SLONE, a/k/a Carol
Harold Slone,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

No. 97-4657

CARLIE SLONE,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

No. 97-4723

STEVE ALLEN LESTER,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

No. 97-4724

HERMAN MCCOY,
Defendant-Appellant.

6

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                  No. 97-4725

RANDY RAY MCCOY,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                  No. 97-4726

WILLIAM ADDISON MCCOY,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                  No. 97-4727

SHERRY VANCE,
Defendant-Appellant.

_____

**COUNSEL**

**ARGUED:** Daniel Knowlton Read, Jr., JESSEE & READ, P.C.,
Abingdon, Virginia; Charles Randall Lowe, Abingdon, Virginia; Dan-
iel Wayne Fast, Wise, Virginia, for Appellants. Steven Randall Ram-
seyer, Assistant United States Attorney, Abingdon, Virginia, for
Appellee. **ON BRIEF:** Susan D. Oglebay, Pound, Virginia, for
Appellant Justice; Mark Fenyk, Marion, Virginia, for Appellant
Arnold Lester; William Bradshaw, BRADSHAW & BRADSHAW,
Big Stone Gap, Virginia, for Appellant Josephine Lester; Richard
Frye, Abingdon, Virginia, for Appellant Sanford Lester; Amelia

7

Bland, BLAND & ASSOCIATES, Marion, Virginia, for Appellant Carlie Stone; Jeff Hamilton, HAMILTON & JORGENSEN, Gate City, Virginia, for Appellant Steven Lester; Steve Kalista, Big Stone Gap, Virginia, for Appellant Herman McCoy; Barry Proctor, Abingdon, Virginia, for Appellant William McCoy. Robert P. Crouch, Jr., United States Attorney, Abingdon, Virginia, for Appellee.

_____

Appeals from the United States District Court
for the Western District of Virginia, at Abingdon.
James P. Jones, District Judge.
(CR-96-29-A)

Argued: June 3, 1998

Decided: August 20, 1998

Before WILKINSON, Chief Judge, MOTZ, Circuit Judge, and
BUTZNER, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**OPINION**

PER CURIAM:

Appellants are among 25 defendants who were convicted on the basis of a 34-count indictment which charged them with conspiracy, mail fraud and making false statements to federal agents and to a grand jury. The government alleged that the defendants had been involved in a long-running conspiracy to commit insurance fraud by staging automobile accidents. The district court divided the defendants into three separate groups for trial. Each trial group, and some defendants singly, make various claims on appeal. While the appeals have not been consolidated we address them in one opinion. For pur-

8

poses of clarity and simplicity we review the claims of the defendants of each group seriatim. Where the situation of any appellant is unique specific reference is made to him or her. Finding no error, we affirm the appellants' convictions and sentences.

GROUP ONE

Group One consists of Benny Justus, Lawrence Edward Justus, Jimmy Lee McCoy, Melissa McCoy, Phyllis McCoy, and Kirby Coleman.

Issue 1

The defendants in Group One first challenge the admission of exhibits 9 and 10 and of testimony related to them. Exhibit 9 was a document prepared by an FBI agent that set out the dates of accidents and the names of the people involved in them. The agent drew lines from each defendant's name so that a juror could trace his or her involvement in various accidents and with various other defendants. Exhibit 10 was a document that organized, according to the counts of the indictment, information about each accident: date of loss, participants, vehicle description, accident description, injury description, treating doctor, insurance payouts, and insurance company. The FBI agent who prepared the documents testified about their preparation and was cross-examined about the documents. The district judge instructed the jury when the documents were admitted that the documents were summaries of the evidence, that the jurors were to regard them as such, and that it was the jurors' understanding of the evidence that would govern any discrepancies.

A district court's decision to admit a summary chart and accompanying foundational testimony is reviewed for an abuse of discretion. See United States v. Johnson, 54 F.3d 1150, 1158 (4th Cir. 1995). The decision to admit these documents is best analyzed under Rule 611(a) of the Federal Rules of Evidence which governs the mode and order of interrogating witnesses and presenting evidence. See id.

> First, we consider whether the summary chart aids the jury in ascertaining the truth. In making this determination, we

9

look to the length of the trial, the complexity of the case, and the accompanying confusion that a large number of witnesses and exhibits may generate for the jury. Second, applying what is essentially an analysis under Rule 403 of the Federal Rules of Evidence, we consider the possible prejudice that would result to the defendant by allowing the summary chart into evidence. In practice, a number of courts considering the issue have developed safeguards to minimize possible prejudice to a defendant by (1) ensuring that the individual who prepared the chart--as well as the evidence upon which the preparer relied--was available for cross-examination by the defendant to test the competence of the evidence as presented in the summary chart and, (2) ensuring that the district court properly instructed the jury concerning the manner in which they were to consider the charts.

Id. at 1159 (citations and footnote omitted).

In this case the sheer number of defendants (between nine and eleven in each group) and accidents (thirty-one summarized in exhibit 10) evidences substantial complexity. The government presented voluminous documentary and testimonial evidence regarding each defendant, each accident, and the connections among the defendants and accidents. Extensive insurance and medical records were also introduced. It is likely that the summary charts aided the jury. Further, while summaries present the risk of prejudice to a defendant, the district judge instituted the necessary safeguards--allowing cross-examination of the FBI agent and instructing the jury about the proper use of the summaries. The district court did not abuse its discretion in admitting these exhibits.

Issue 2

The Group-One defendants argue that the government referred to the failure of the defendants to call witnesses or put on evidence in their defense and thereby infringed the defendants' Fifth Amendment right not to testify. The defendants point first to the government's statement that the defendants had the power to subpoena witnesses and an unfinished statement: "And they didn't call . . . ." They also

10

point to the prosecution's repetition of some of the defendants' statements: "If we don't tell them nothing, they can't prove nothing." The defendants suggest that the government repeated these statements to contrast the defendants' choice of silence with the choice of testifying witnesses.

To determine whether the prosecution's statements have infringed the defendants' right not to testify we ask: "Was the language used manifestly intended to be, or was it of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify?" United States v. Francis, 82 F.3d 77, 78 (4th Cir. 1996) (internal quotation marks and citations omitted).

Taken in their full context, it is apparent that the first group of statements was intended to rebut statements by the defense suggesting that the government controlled the evidence, presented evidence only favorable to its case, and avoided evidence that would have favored the defense. An examination of the context in which the second group of statements was made reveals that the comments were intended to illustrate that the government believed the evidence showed that the defendants planned to and did give false testimony to the grand jury. We agree with the district court that neither of these groups of statements was intended as a comment on the failure of the defendants to testify; nor would a jury naturally and necessarily take them to be such. See id. at 78-79.

Issue 3

The defendants in Group One also challenge the admission of Jamie Lester's testimony. They contend that Jamie Lester's concession that he would not tell the truth about his brother, his father, and his mother revealed that he was an incompetent witness, precluded effective cross-examination and thereby deprived the defendants of their rights to due process and to confront witnesses. They assert that Lester's statements undercut his oath to testify truthfully and suggest that he was not made aware of the necessity of so doing.

Jamie Lester swore to tell the truth and was aware of the penalties of perjury. The government, on direct examination, explored Lester's false testimony before the grand jury, the breach of his plea agree-

11

ment by his persistent refusal to tell investigators the truth, and his continuing inclination not to provide information about his immediate family. See Fed. R. Evid. 607. Lester's credibility was a subject of cross-examination. The government did not preclude effective cross-examination by the defense. The district court's decision to admit the testimony over the defendants' motions to strike and for a mistrial was not erroneous.

Issue 4

A

The defendants also contend that the evidence does not support their conspiracy convictions. They argue that the government's evidence showed multiple, separate conspiracies rather than the single conspiracy charged in Count One. They further contend that they were prejudiced by the introduction of evidence related to the accidents of alleged coconspirators in which they did not participate. The defendants assert that the evidence presented varied impermissibly from the allegations of their indictment.

"In a conspiracy prosecution, a defendant may establish the existence of a material variance by showing that the indictment alleged a single conspiracy but that the government's proof at trial established the existence of multiple, separate conspiracies." United States v. Kennedy, 32 F.3d 876, 883 (4th Cir. 1994). It is for the jury to decide whether the evidence showed a single or multiple conspiracies. See United States v. Urbanik, 801 F.2d 692, 695 (4th Cir. 1986). Therefore, "a conspiracy variance claim amounts to a challenge to the sufficiency of the evidence supporting the jury's finding that each defendant was a member of the same conspiracy." United States v. Townsend, 924 F.2d 1385, 1389 (7th Cir. 1991). The jury's finding must stand (1) if the jury was properly instructed with respect to the distinction between single and multiple conspiracies and (2) if a reasonable jury could have found the existence of the single conspiracy charged in the indictment. See Urbanik, 801 F.2d at 695. The Group-One defendants do not challenge the instructions.

If the jury reasonably finds a single conspiracy as alleged in the indictment, there is no variance between the facts alleged and the

12

facts proved. Our review is therefore limited to a determination of whether the evidence, taken in the light most favorable to the government, would allow a reasonable jury to find that the defendants were part of a single conspiracy. See id. "A single conspiracy exists where there is one overall agreement, or one general business venture. Whether there is a single conspiracy or multiple conspiracies depends on the overlap of key actors, methods and goals." United States v. Leavis, 853 F.2d 215, 218 (4th Cir. 1988) (internal quotation marks and citations omitted). The government may prove the agreement entirely by circumstantial evidence. See United States v. Burgos, 94 F.3d 849, 858 (4th Cir. 1996).

The government's proof established a significant overlap of key actors: the majority of the defendants were directly involved in an accident with either Jimmy or Daniel McCoy; the few remaining were involved in accidents with people who had been involved in accidents with either Jimmy or Daniel McCoy. The defendants' methods to assure successful claims and conceal their fraudulent nature were strikingly similar: in each accident, the owner of the wrecked car was paid half of each participant's insurance recovery; the accidents were set up as phantom or friendly collisions (in the former the participants would assert that they were run off the road by a long-gone and indescribable vehicle; in the latter the participants would run two cars into each other); many accidents were attributed to brake failure; the participants visited a small group of doctors for pain killers and complained of soft-tissue injuries; and often the vehicles were titled very close in time to the date of the accident in which they were involved. The participants achieved their goal: recompense from insurance companies for faked accidents and injuries.

The evidence is sufficient to support the jury's conclusion that a single conspiracy existed and that the defendants were part of it.

B

The Group-One defendants make passing reference to an argument based on an allegedly impermissible expansion of the length of the conspiracy and resulting prejudice from the introduction of grand-jury testimony of coconspirators. The argument is made more fully by the defendants in Group Two, Issue 4, and is discussed and dispensed

13

with later in this opinion, on a basis equally applicable to these defendants.

Issue 5

The defendants challenge their sentences and contend that the district court erred in (1) the calculation of total monetary loss attributable to each defendant, (2) the enhancement for more than minimal planning, and (3) the enhancement for obstruction of justice.

We review the district court's application of the Sentencing Guidelines for clear error when the issue is one of fact and de novo when the issue is one of law. See United States v. Daughtrey, 874 F.2d 213, 217 (4th Cir. 1989).

A

The district court attributed to each defendant the amount of insurance proceeds obtained in all accidents that followed the date on which the particular defendant joined the conspiracy. See U.S. Sentencing Guidelines Manual § 2F1.1, comment. (n.8) (1995) (hereafter USSG). The court considered actual losses when claims were paid and intended losses when claims were denied as contemplated by USSG § 2F1.1, comment. (n.7). The district court found with respect to each defendant that "[a]ll of such losses were incurred through similar methods of fraud in the furtherance of the jointly undertaken criminal activity and the individual amounts obtained from insurance companies were all reasonably foreseeable to the defendant, based upon the defendant's knowledge of and participation in the conspiracy." The defendants contend only that there was no grand fraud conspiracy. The jury reasonably found otherwise. The court's averaging comports with the Guidelines and its findings of fact are not clearly erroneous.

B

The district court further found, as a matter of fact, that the offenses of which the defendants were convicted involved more than minimal planning or a scheme to defraud more than one victim. See

14

USSG § 2F1.1(b)(2). The defendants contend that there was no evidence that they participated in planning or recruiting and that, rather, the evidence showed that the defendants did not understand the scope and structure of the enterprise.

It is apparent from the evidence that success of the conspiracy depended on more than minimal planning and, in fact, on some coordination of stories for presentation to doctors, insurance companies, FBI agents and the grand jury. Further, more than one victim was defrauded--many insurance companies were defrauded. The district court's decision to enhance the defendants' sentences for more than minimal planning comports with the facts of this case and the Guidelines.

C

The district court also enhanced the defendants' sentences pursuant to USSG § 3C1.1. The defendants contend that they were convicted of perjury, punished for it, and that application of an enhancement for the same conduct violates the Double Jeopardy Clause.

The Guidelines explain:

> Where the defendant is convicted both of the obstruction offense and the underlying offense, the count for the obstruction offense will be grouped with the count for the underlying offense under subsection (c) of § 3D1.2 (Groups of Closely Related Counts). The offense level for that group of closely related counts will be the offense level for the underlying offense increased by the 2-level adjustment specified by this section, or the offense level for the obstruction offense, whichever is greater.

USSG § 3C1.1, comment. (n.6).

In the defendants' case the offense level was greater for the fraud offenses, therefore that offense level was increased by two levels for the perjury offenses. The defendants were not twice punished for the perjury offenses.

15

Conclusion

The convictions and sentences of the defendants in Group One are affirmed.

GROUP TWO

Group Two consists of Tony Matney, Terry Edward McCoy, J. B. Slone, Daniel Thomas McCoy, Harold McCoy, Roger McCoy, Wilbert McCoy, and Leander Slone.

Issue 1

The defendants in Group Two contend that it was error for the district court to deny their motion to dismiss Count One and their later motion to grant judgment of acquittal or a new trial. For this proposition, they relied then and rely now on the argument that the evidence did not prove a single conspiracy but, at best, proved multiple conspiracies.

We dispensed with this contention in our discussion of the fourth issue raised by Group One. The evidence in the two trials was substantially similar and established the same connection between the defendants and the same patterns of fraud. Our analysis of the facts and law, as applied to this group of defendants leads us to the same conclusions as did our analysis of the Group-One defendants' similar argument. For these reasons, the district court did not err when it denied the defendants' motions to dismiss, for acquittal, and for a new trial.

Issue 2

The Group-Two defendants argue that it was error for the district court to reject their jury instructions regarding the multiple-, single-conspiracy issue.

"The decision of whether to give a jury instruction and the content of an instruction are reviewed for abuse of discretion." United States v. Abbas, 74 F.3d 506, 513 (4th Cir. 1996).

16

The district court instructed the jury to decide "whether there were really multiple, separate conspiracies to commit these crimes." And, it instructed the jurors that the government bore the burden of proving beyond a reasonable doubt that the defendants were members of the single conspiracy charged in the indictment. It instructed the jurors that if the government failed in this proof they were required to find the defendants not guilty of the conspiracy charged in Count One.

The jury was properly instructed to determine whether the government had proved the existence of a single conspiracy. Cf. Urbanik, 801 F.2d at 696.

Issue 3

The Group-Two defendants challenge the admission of two government exhibits--one a summary of accident information and the other a web-like diagram linking defendants involved in particular accidents to other defendants. We affirmed the propriety of admitting these two documents in our discussion of the Group-One defendants' first issue after considering virtually the same argument. In accordance with that discussion, we hold that the district court did not err in admitting this evidence in this trial.

Issue 4

A

The defendants contend that the government did not prove the conspiracy charged in Count One but rather proved, at best, separate conspiracies--one to commit fraud and a second to commit perjury. They rely primarily on Grunewald v. United States, 353 U.S. 391 (1957); Lutwak v. United States, 344 U.S. 604 (1953), and Krulewitch v. United States, 336 U.S. 440 (1949). These cases make "a vital distinction . . . between acts of concealment done in furtherance of the main criminal objectives of the conspiracy, and acts of concealment done after these central objectives have been attained, for the purpose only of covering up after the crime." Grunewald, 353 U.S. at 405.

We will not presume that a conspiracy includes an implied subsidiary conspiracy to conceal; we require that the government prove that

17

an agreement to conceal was part of the initial conspiracy. <u>See</u> <u>Krulewitch</u>, 336 U.S. at 442-44.

Whether there was a variance between the conspiracy charged and the proof at trial turns on the sufficiency of the evidence to support the jury's verdict. <u>See</u> discussion <u>infra</u> Group One, Issue 4A; <u>see also</u> <u>United States v. Potamitis</u>, 739 F.2d 784, 787-88 (2d Cir. 1984). Here, the evidence, taken in the light most favorable to the government, clearly would allow a reasonable jury to find that the defendants were part of a conspiracy that encompassed various acts of concealment.

The government introduced two surreptitiously recorded conversations of coconspirators. In the first, Daniel McCoy says: "That's what I say. As long as we don't say nothin', they can't prove nothin'." In the second, Herman McCoy says: "Everybody in here. . . If anybody tells, everybody up and down this creek will be in jail." Jamie Lester also testified that when he was subpoenaed to come before the grand jury he rode down with his father--Arnold Lester, his brother--Timothy Lester, and Jimmy McCoy. Jamie Lester testified that Jimmy McCoy said: "Make sure you tell what you told before to the insurance."

These statements establish the intent of the conspirators to conceal their fraud. Participants were coached from the beginning on what to say to insurance companies and not to deviate from those stories. These continuing acts of concealment were "done in furtherance of the main criminal objectives of the conspiracy." <u>Grunewald</u>, 353 U.S. at 405.

Concealment was also essential to the continuing vitality of the conspiracy. On April 27, 1994, Herman McCoy, discussing the police investigation, warned against "anybody tell[ing]." On August 4, 1994, Daniel McCoy, also discussing the investigation, extolled the benefits of "say[ing] nothing." On April 11, 1995, and August 7, 1995, according to the government's evidence, two more accidents were staged.

The similarity of the defendants' approach to their appearances before the grand jury also illustrates the joint pursuit of one of the main criminal objectives of the conspiracy--concealment. Many of the defendants said that they were not sure how many accidents they

18

had been in. They complained of bad memories. They told the grand jury that they could not recall details of accidents--who was involved, how they happened . . . even, whether they happened. When pressed to tell the grand jury whether they were in a particular accident that they could not recall, defendants resorted to some version of: "Well, if the [accident] report says I was I guess I was in it."

From this and the other evidence, a jury could reasonably infer a concerted and continuing effort to conceal. Consequently, we find that the evidence was sufficient to support the jury's finding that the defendants' fraud, obstruction of the investigation, and perjury were part of a single conspiracy.

B

The defendants also contend that the district court erred when it admitted the statements of coconspirators against them. Again, they argue that the government did not prove that concealment was part of the initial conspiracy.

Federal Rule of Evidence 801(d)(2)(E) permits the admission of coconspirator statements if the government can prove, by a preponderance of the evidence, that the statements were made in furtherance of and during the course of the conspiracy. See United States v. Neal, 78 F.3d 901, 904-05 (4th Cir. 1996); United States v. Blevins, 960 F.2d 1252, 1255 (4th Cir. 1992). The district court's decision to admit evidence under Rule 801(d)(2)(E) is reviewed for an abuse of discretion, and its findings of fact regarding the scope of the conspiracy are reviewed for clear error. See Blevins, 960 F.2d at 1255. The court may examine all evidence before it, including the coconspirator statements, to determine admissibility. See id.

A district court may admit conditionally the statements of coconspirators subject to proof of the facts necessary for admission. See id. at 1256. Here, the district court chose this course. The defendants again moved, at the conclusion of the government's case in chief, for exclusion of the testimony of coconspirators. The district court found, based on the evidence presented, that the grand-jury testimony constituted statements by coconspirators made during the course of and in

19

furtherance of the conspiracy. The district court affirmed this finding in its ruling on the defendants' motions for a new trial.

The record discloses that the statements were made during the course of and in furtherance of the conspiracy and were plainly admissible. The summary and analysis of the evidence in our discussion of the previous issue provides a solid basis for admission. In the defendants' statements, they recognize that everyone will go to jail if anyone tells, contend that if they keep quiet the government will not be able to prove anything, and encourage false testimony. The fact that some of these statements were made before the conspiracy committed its final acts of fraud illustrates that they were made during the course of the conspiracy. The statements were made to escape detection, assured the continued viability of the conspiracy, and were thus made in furtherance of that conspiracy. See Neal , 78 F.3d at 905. The defendants' perjury naturally followed in the concealment plan.

The government must also provide evidence of the existence of the conspiracy independent of the statements themselves. See Fed. R. Evid. 801(d)(2). In this case the most persuasive independent evidence of a conspiracy to conceal is the perjury itself. The fact that the defendants committed perjury, and did so in a similar fashion, is corroborative independent evidence of the conspiracy to conceal. The defendants told the same stories and invoked the same forgetfulness. Reviewing its evidentiary ruling, the district court cited this similarity of method, writing: "[T]he statements, which illustrated that each defendant gave similar and allegedly fabricated details of the staged automobile accidents in which they were involved, were relevant to and probative of the crimes charged in the indictment." The defendants' perjury was not offered to prove the truth of matters asserted therein but as circumstantial evidence of the conspiracy.

The defendants' perjury was a legally operative act for which they were being prosecuted. The grand-jury testimony of each defendant was admissible against other defendants because the government alleged and introduced sufficient evidence to prove that the defendants were part of a single conspiracy to commit fraud and perjury-- as the district court found, as the jury reasonably found, and as we find.

20

Accordingly, there was no clear error in the district court's findings of fact and no abuse of discretion in its admission of the statements of coconspirators.

Issue 5

The Group-Two defendants challenge the district court's denial of their motion to dismiss Count 14 of the indictment which charged a violation of 18 U.S.C. § 1001 (false statements generally). They base their argument on the exculpatory-no doctrine which was rejected by the Supreme Court in United States v. Brogan, 118 S.Ct. 805 (1998). The district court did not err in this respect.

Issue 6

These defendants also challenge the admission of the full transcripts and tapes of the defendants' testimony before the grand jury. They allege that the tapes included comments and conduct by the Assistant U.S. Attorney which constituted prosecutorial misconduct. They point to statements that the prosector made when questioning the defendants before the grand jury: "You want to tell the truth now?" and "Lying's hard to do, isn't it?"

"We have stated that the test for reversible prosecutorial misconduct generally has two components: that (1) the prosecutor's remarks or conduct must in fact have been improper, and (2) such remarks or conduct must have prejudicially affected the defendant's substantial rights so as to deprive the defendant of a fair trial." United States v. Chorman, 910 F.2d 102, 113 (4th Cir. 1990) (internal quotation marks and citation omitted).

Although the statements and others of like import were improper, we cannot conclude that the defendants were prejudiced by their introduction. The district court instructed the jury that the questions and comments by the Assistant U.S. Attorney were not evidence and were not to be considered as such. We presume that the jury followed this instruction. See United States v. Jones, 907 F.2d 456, 460 (4th Cir. 1990).

21

<u>Issue 7</u>

Harold McCoy challenges the district court's exclusion of his social security disability records and school records which, he argues, would have shown that he was mentally impaired and would have explained his inability to remember accidents he was involved in. He asserts that his "confused contradictory and clearly erroneous grand jury testimony . . . could only be properly understood and interpreted if the petit jury was informed that it was the product of a mentally and emotionally severely impaired individual."

The district court declined to admit the documents, finding that they were irrelevant and that they were within the ambit of Fed. R. Crim. P. 12.2(b).

A defendant is required to give the government notice of his intent to introduce expert testimony relating to a mental disease or defect bearing on the issue of guilt. Fed. R. Crim. P. 12.2(b). If notice is not given, as it was not here, the district court may exclude the evidence. Fed. R. Crim. P. 12.2(d).

The district court correctly found that the documents were irrelevant if not introduced to illuminate Harold McCoy's capacity for perjury--an issue of guilt. As such, admission of the documents was governed by Rule 12.2. Notice was not given; the district court ruled within its discretion.

<u>Issue 8</u>

A

The defendants challenge their sentences on several grounds, contending that the court erred in its calculation of total monetary loss attributable to each defendant and that the court erred in applying an enhancement for more than minimal planning. In our discussion of the fifth issue raised by Group One, we dispensed with these arguments on a legal basis that is equally applicable here. The district court found, as a matter of fact, that fraud committed after the defendants knowingly joined the conspiracy was foreseeable to them. The

22

court also found, as a matter of fact, that the offense involved more than minimal planning or a scheme to defraud more than one victim. We see no error in these findings.

B

Harold McCoy challenges the district court's decision not to depart downward from his sentence on the basis of diminished capacity pursuant to USSG § 5K2.13. The district judge recognized his authority to depart and declined to do so, finding that the facts did not warrant departure. This decision is not reviewable. See United States v. Weddle, 30 F.3d 532, 541 (4th Cir. 1994).

C

Wilbert McCoy also challenges the district court's decision not to depart downward from his sentence on the basis of his I.Q. pursuant to USSG § 5K2.13. Again, the district judge recognized his authority to depart and declined to do so. This decision is not reviewable. Id.

Wilbert McCoy additionally contends that the court erred in its decision not to reduce his sentence based on his allegedly minor role in the conspiracy pursuant to USSG § 3B1.2(b). He alleges that "there is no evidence of any . . . connections with the three alleged leaders of the conspiracy."

We review the district court's decision for clear error. See United States v. Reavis, 48 F.3d 763, 768-99 (4th Cir. 1995). "A defendant is not entitled to `minimal' participant status unless [ ]he has had an extremely limited role in a criminal enterprise." Id. at 769. We measure both the defendant's culpability as related to other defendants and his "individual acts and relative culpability against the elements of the offense of conviction." Id.

Wilbert McCoy was involved in two accidents. Jimmy McCoy, one of the government's posited central figures, was a participant in one of them. Therefore, not only is Wilbert McCoy's allegation doubtful, but it fails to establish by a preponderance of the evidence that he was less culpable than other defendants and less culpable of the offense.

23

See id. The district court did not err in declining to adjust his offense level.

Conclusion

The convictions and sentences of the defendants in Group Two are affirmed.

GROUP THREE

Group Three consists of Jimmy Stewart Justice, Arnold Lester, Josephine Lester, Sanford Steven Lester, Carl Harold Slone, Carlie Slone, Steve Allen Lester, Herman McCoy, Randy Ray McCoy, William Addison McCoy, and Sherry Vance.

The defendants in Group Three preliminarily ask to join in a number of arguments made by Group One and Group Two. We have reviewed those arguments as they pertain to this group of defendants and find, in accordance with our previous discussion, no error.

Issue 1

The Group-Three defendants assign error to the district court's denial of their motions to dismiss Count One and for judgment of acquittal or a new trial. They contend that the government did not produce substantial evidence of a single conspiracy. This argument was also made by Groups One and Two. The Group-Three defendants are bound by the same legal analysis. The facts adduced at all three trials were substantially similar. We have undertaken an independent review of the evidence presented in this trial and find that the jury could have reasonably found the existence of a single conspiracy. Thus, the district court did not err in denying these motions.

Issue 2

Jimmy Justice argues that the evidence was insufficient to convict him, even if it was sufficient to support the convictions of the remainder of the defendants. Jimmy Justice concedes that he was involved in two accidents. He contends, however, that even if the evidence sup-

24

ports the conclusion that the July 25, 1992, accident was staged, he didn't know anything about it.

The jury's verdict must stand if the evidence, taken in the light most favorable to the government, would allow a reasonable jury to find that Jimmy Justice was part of the conspiracy. See Urbanik, 801 F.2d at 695.

Jimmy Justice's testimony reveals questions of credibility. He denied and later admitted that he had lived in Guesses Fork. He gave inconsistent reasons for seeing the same doctor that the coconspirators regularly saw instead of his regular doctor. He was not forthcoming about prior injuries in a discussion with the insurance adjustor. Nor was he forthcoming about his relationship with Wilbert Lee McCoy. He testified that he made a claim against Wilbert Lee McCoy's insurance company for the July 25th accident--when faulty brakes caused the vehicle in which Jimmy Justice was riding to run into a vehicle in which other convicted coconspirators were riding. He could not explain why the driver in that accident did not avoid the second car. He testified that although he was involved in a second accident with Wilbert Lee McCoy, he did not file a claim; but he conceded that Wilbert McCoy might have. It was for the jury to weigh the evidence and determine the nature of Jimmy Justice's involvement. The evidence would permit a reasonable jury to find Jimmy Justice guilty of Count One.

Issue 3

These defendants contend that it was error for the trial court to admit the full tapes and transcripts of the defendants' appearance before the grand jury. They assert three different rationales for their objection.

A

The defendants first assert that the transcripts should have been excluded because they contained statements of the prosecutor which evidenced his personal belief. We addressed the propriety of admitting the tapes, with a cautionary instruction, in light of this argument

in our discussion of Group Two's Issue 6. We similarly find no error in the admission of the full tapes and transcripts in this trial.

B

The defendants also contend that the tapes and transcripts should not have been admitted because the statements therein were not made during the course of and in furtherance of the conspiracy and were thus not within Rule 801(d)(2)(E). We have addressed this argument in our discussion of Group Two, Issue 4. The same legal analysis when applied to a substantially similar set of facts yields the same result. The district court did not err in admitting the full tapes and transcripts.

C

The defendants further argue that the tapes and transcripts should have been excluded under Fed. R. Evid. 403, because their probative value was substantially outweighed by their prejudicial effect. They contend that the tapes introduced only the mockery of the grand jury and the derision of the prosecutor and that the transcripts could have been redacted to prevent this.

We will only disturb the district court's decision under Rule 403 in extraordinary circumstances. See United States v. Love, 134 F.3d 595, 603 (4th Cir. 1998). These are not such circumstances. Only by admitting the entire tapes and transcripts of the defendants' grand-jury testimony could the jurors properly evaluate the perjury charges. The tapes and transcripts allowed the jury to judge tone, pauses, evasions, and inconsistencies which would not have been apparent in redacted transcripts. Furthermore, the district judge instructed the jurors that the questions and comments of the prosecutor were not evidence. We presume they followed this instruction. See id. We find no error in the district court's evidentiary rulings.

Issue 4

The Group-Three defendants argue that the district court erred in refusing its proffered instructions on the single-, multiple-conspiracy

26

issue. We have discussed the propriety of the district court's instructions (see Group Two, Issue 2). The instructions given here were substantially the same, and we again affirm their propriety.

CONCLUSION

The convictions and sentences of all of the defendants in the three separate trial groups are affirmed.

AFFIRMED

27